UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

TYLON C. OUTLAW,                          )
                                          )
    Plaintiff,                            )
                                          )
    v.                                    )        Case No. 3:07-cv-01769
                                          )
CITY OF HARTFORD, DETECTIVE               )
TROY GORDON, OFFICER MICHAEL              )
ALLEN,                                    )
                                          )
    Defendants.                           )

**OPINION AND ORDER ON
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND MOTION IN LIMINE
(Docs. 75, 76 & 77)**

Plaintiff sues the City of Hartford and two of its police officers pursuant to 42 U.S.C.
§ 1983, alleging that he was subjected to excessive force during arrest. He alleges that the
officers, in their individual capacities, violated his Fourth, Eighth, Ninth, and Fourteenth
Amendment rights. He also claims that the City failed to supervise the officers properly and that
its police department engaged in a pattern of misconduct against arrestees. Additionally, he
asserts against all defendants state-law claims of assault and battery, intentional and negligent
infliction of emotional distress, and violations of the Connecticut Constitution. (Doc. 1.)

Discovery is complete. Defendants have filed motions for summary judgment. (Docs. 75
& 76.) On March 26, 2015, the court conducted a hearing on the motions at which all parties
were represented by counsel. The court will consider the claims against the individual officers
first and then the claim against the City. The court will also consider the City's motion to
exclude the testimony of plaintiff's police practices expert David Stothers from trial. (Doc. 77.)

I.      **Factual Background**

     A. **Facts Related to the Claims Against the Officers in Their Individual Capacities**

This case arises out of an incident that took place a few minutes before midnight on December 17, 2004. The parties agree that plaintiff was standing in the northbound travel lane on Union Place in Hartford, Connecticut. His back was to the street and he was facing the passenger side of a double-parked automobile. (Doc. 81 ¶ 1.) Other people were on foot that evening in the area, which has several bars and restaurants.

Hartford Police Detective Troy Gordon was traveling northbound on Union Place in an unmarked police car. Detective Gordon was dressed in street clothes. He and plaintiff exchanged unfriendly words as he drove past. (*Id*. ¶¶ 3-4.) Detective Gordon stopped his car and approached plaintiff. (*Id*. ¶ 5.)

At this point, the two stories diverge. Detective Gordon's version is that he got out of his car to speak with plaintiff. He pulled his badge out from his shirt so that it was visible around his neck. (Doc. 81-6 at 4, 14.) As he approached plaintiff, plaintiff moved towards him. Plaintiff swore at him and attempted to punch him. (Doc. 75-2 at 2.) Detective Gordon kicked plaintiff in the shin in an effort to stop him from advancing. (Doc. 81-6 at 7.) Officer Allen, a uniformed officer who was traveling in a patrol car behind Detective Gordon on Union Place, came to Detective Gordon's aid and struck plaintiff's raised arm from behind with his baton. (Doc. 81-21 at 4.) Officer Allen struck plaintiff again from behind, this time on the head. (Doc. 75-2 ¶¶ 6-10.) Plaintiff fell to the ground. Plaintiff continued to fight with the police by kicking at them. In response, Officer Allen struck at plaintiff's leg with his baton. (Doc. 81-22 at 15.)

Plaintiff's version is that Detective Gordon exited his car without identifying himself as a police officer. (Doc. 81-1 at 9; Doc. 81-2 at 2.) Plaintiff states that he never saw Gordon's badge during the incident. (Doc. 81-1 at 11.) Detective Gordon charged plaintiff while holding something dark in his left hand that plaintiff thought was a gun. (Doc. 81-2 at 3-4.) Plaintiff thought Detective Gordon was going to shoot him. (Doc. 81-2 at 9.) When Detective Gordon got close enough, he kicked plaintiff twice, the first time in the stomach. (Doc. 81 at 10.) At the same time, plaintiff was struck on the back of his head with something that felt like a bat. (Doc. 81-2 at 10.) Plaintiff fell to the ground and assumed a fetal position. He was struck repeatedly

2

in the head and right knee by a bat-like object. (Doc. 81 at 11.) He was also struck in the face and legs. He was kicked. (*Id.* at 12-13.) He suffered a fracture of his right knee and injury to his face and head. (*Id.*) Other officers appeared and joined in the assault on plaintiff where he lay on the street. (*Id.* at 15.) Officer Allen grabbed plaintiff's collar and dragged him sixty-two feet to wait for an ambulance. (*Id.* at 18.)

Plaintiff's expert David Stothers has provided an opinion concerning alleged errors and excessive use of force by the police. He criticizes the two defendant officers for failing to interview potential witnesses to the incident, failing to identify the other officers who responded, and misidentifying the vehicle that plaintiff was facing at the time of the incident. Turning to the police conduct itself, he criticizes Officer Gordon for mishandling a minor incident of walking in the street, failing to identify himself as an officer, failing to call for assistance, failing to manage the encounter with plaintiff appropriately, using excessive force by kicking plaintiff in the stomach and shin, and writing an inadequate police report concerning the incident. Stothers criticizes Officer Allen for using his baton improperly to strike plaintiff in the head and knee and omitting important details from his report of the incident. (Doc. 81-24 at 3-7, 11-12.)

## B. Facts Related to the Claims Against the City of Hartford

The facts concerning the claims against the City of Hartford are more complex and span several decades. As outlined by plaintiff, these facts are intended to support a *Monell*-type claim of systemic disregard for the treatment of civilians by the police.

The facts advanced by the City are either admitted by plaintiff or, more frequently, met with a statement that plaintiff lacks information concerning their truth. The facts upon which the City relies are as follows:

All Hartford police officers, including Troy Gordon and Michael Allen, received training at the Police Training Academy prior to the commencement of their service. The curriculum complies with the requirements of the State of Connecticut's Police Officers Standards Training Council. In addition, in the years since they were sworn into the police force both Detective Gordon and Officer Allen received additional training. Both underwent background checks before they were hired. (Doc. 76-3 ¶¶ 5-9.)

3

The City states that it supervised the defendant officers in the use of force. (*Id.* ¶ 10.) Plaintiff strongly disagrees that defendants and other Hartford Police Department (HPD) officers received supervision in the use of force. (Doc. 84 at 3.)

The City also states that plaintiff did not file a citizen's complaint concerning the use of force. (Doc. 76-3 ¶ 12.) Plaintiff counters by stating that other litigation in this court, specifically a 2007 decision by Judge Ellen Bree Burns in *Cintron v. Vaughn*, No. 3:69cv13578, 2007 WL 4240856 (D. Conn. Nov. 29, 2007), established that there was no effective complaint procedure. (Doc. 84 at 3.)

The parties agree that in 2005, plaintiff entered an *Alford* plea to the offense of creating a public disturbance in connection with the incident on December 17, 2004.[1]

In his statement of disputed facts, plaintiff begins with a settlement stipulation entered on June 21, 1973 in this court, which required a record-keeping system for civilian complaints against police officers. *See Cintron v. Vaughn*, Docket No. 3:69-cv-13578 (D. Conn. June 21, 1973) (Doc. 84-19). Following the filing of a contempt motion in 2005 in the same case, Judge Burns found in 2007 that the City had failed to follow the original settlement and subsequent revisions in various respects, including the failure to increase the number of Internal Affairs investigators during the years 2004-06. (Doc. 84-3 at 7-9.) The City avoided a finding of contempt by initiating training and other measures in 2005. (Doc. 84-3 at 8.) Plaintiff attributes the incident involved in this case to the City's delay in instituting the original settlement stipulation and taking the required measures to reduce the number of violent incidents involving the police and civilians. (Doc. 83 at 9.)

Plaintiff states that from 1998 to 2005 there have been eighty-eight claims of possible excessive force against Hartford police officers and sixty-five lawsuits filed on these grounds. (Docs. 84 at 20; 84-8; 84-9.)

---

[1] An *Alford* plea, named for the Supreme Court's decision in *North Carolina v. Alford*, 400 U.S. 25 (1970), "'is simply a guilty plea, with evidence in the record of guilt, typically accompanied by the defendant's protestation of innocence and his or her unequivocal desire to enter the plea.'" *Abimbola v. Ashcroft*, 378 F.3d 173, 181 (2d Cir. 2004) (quoting *United States v. Mackins*, 218 F.3d 263, 268 (3d Cir. 2000)).

Plaintiff alleges that both officers involved in this case had a history of complaints. The record shows complaints against Detective Gordon for shooting a raccoon with his personal weapon at his own home while on duty in 2003, threatening another officer in 2000, and placing a woman in handcuffs at a traffic stop in 1994. (Docs. 84 at 14; 84-2 at 92.) Each incident resulted in Gordon's suspension or reprimand. Plaintiff alleges that Gordon's supervisor at the time of the altercation in this case had insufficient knowledge of these incidents. Plaintiff further states that Officer Allen was accused in 2004 of excessive force when he struck a civilian in the head with his baton with enough force to break the baton. (Doc. 84 at 18-19.) Plaintiff also points to an incident in 2006 when Officer Allen was accused of entering a residence illegally, as well as a separate use-of-force incident, the details of which are not specified. (Doc. 84 at 19.)

## II.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.    Motion for Summary Judgment
### A.  Fourth Amendment Claims Against Individual Police Officers

Defendants Troy Gordon and Michael Allen move for summary judgment in their favor on plaintiff's Fourth Amendment claims on the grounds that the force they used was not excessive and not clearly prohibited at the time. Defendants deny that Gordon kicked plaintiff or that Allen broke plaintiff's knee with his baton. They admit that Allen intentionally hit plaintiff with the baton, but contend that the blow to the head was unintentional and not excessive under the circumstances. Officer Allen also claims that he is entitled to qualified immunity.

### 1.  Whether Excessive Force Was Used

Claims that police used excessive force in conducting an arrest or investigatory stop of a free citizen are governed by the Fourth Amendment, which prohibits unreasonable seizures of

the person. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Supreme Court has recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Whether the force used to carry out a particular stop is reasonable under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* This is an objective standard that requires an examination of "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Viewing the facts in the light most favorable to plaintiff, the court concludes that a reasonable jury could find that Gordon and Allen used excessive force in their encounter with plaintiff.

Plaintiff alleges that after he and Gordon exchanged words, Gordon ran up to him and kicked him in the stomach. His version of events is supported by the testimony of an eyewitness who saw Gordon "charge[] at [plaintiff] with a running kick." (Doc. 80 at 4.) Defendants argue that there is no medical evidence that plaintiff was kicked in the stomach and it is not mentioned in the police report. Plaintiff's failure to report the kick to the stomach when he was describing the incident to medical staff or police does not mean that it did not occur. Plaintiff testified that he was focused on the other injuries he sustained during the altercation. (Doc. 75-5 at 15.) A reasonable jury could find plaintiff's version of events to be credible. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . .").

A use of force does not have to result in serious injury to be found excessive. *See, e.g.,* *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) (holding allegations that officer pushed plaintiff against car in rough manner, causing bruises lasting a couple of weeks for which plaintiff did not seek medical attention, were sufficient to withstand summary judgment on excessive-force claim). The question is whether the use of force was reasonable under the circumstances. Plaintiff admits that he was standing in traffic and that Gordon directed him to get out of the road. According to plaintiff, Gordon failed to identify himself as a police officer

until after plaintiff was arrested.  From plaintiff's perspective, he was accosted by a belligerent driver who then attacked him for seemingly no reason.  It is not clear from the record that any force was necessary to arrest plaintiff for the relatively minor infractions of improper use of the highway, threatening, and breach of the peace.  (Doc. 75-4 at 2.)  There is no evidence that plaintiff had a weapon or attempted to flee, or that he approached Gordon before he got out of the car.  Under the circumstances, a jury could find that it was unreasonable for Detective Gordon to run up and kick plaintiff in the stomach in order to arrest him for blocking the road.

Likewise, there are genuine issues of material fact that preclude awarding summary judgment to Officer Allen.  Allen claims that he saw Gordon being attacked by plaintiff and that he began striking plaintiff with the baton in order to help Gordon.  (Doc. 75-2 ¶¶ 8-9.)  He notes that plaintiff's expert testified that use of a baton when a police officer is being assaulted by a civilian generally is not excessive force.  (Doc. 81-4 at 2.)  However, plaintiff's expert also testified that it was not appropriate to aim the baton for the shoulder area under the circumstances, because it posed a risk of severe head injury.  (*Id*. at 3-4.)  Furthermore, plaintiff testified that he did not initiate the physical encounter with Gordon and did not strike or punch Gordon.  (Doc. 81-2 at 4, 13.)  At least one witness corroborated his story.  (Doc. 81-13 at 5, 7.)

There is also a genuine dispute over the cause of plaintiff's knee fracture.  Plaintiff claims that Officer Allen struck his right knee with the baton, breaking the patella.  Defendants maintain that plaintiff likely hit his knee on the pavement when he fell.  Plaintiff's medical expert stated that plaintiff's patellar fracture could have been caused by a blow to the knee.  He stated that it also could have been caused by a fall, and he could not say for sure what caused the fracture.  (Doc. 81-12 at 4.)  Taken in the light most favorable to plaintiff, the expert's testimony supports his claim.  Given this testimony and the fact that Officer Allen admits using a baton to strike plaintiff multiple times, a jury could reasonably infer that the knee fracture was caused by Officer Allen's baton rather than a fall.

In light of the conflicting evidence, there is a genuine factual dispute about whether the amount of force used by Officer Allen was necessary under the circumstances.  Accepting plaintiff's claim that he did not attempt to resist or struggle with the officers, a jury could find that it was unreasonable for Officer Allen to use the baton in the manner that he did.  As discussed above, the parties offer conflicting accounts regarding whether plaintiff or Gordon

initiated the use of force, how much force was used by plaintiff, Gordon, and Allen, and whether plaintiff fought back against the officers. Resolving these conflicting accounts will require credibility determinations that cannot be made by the court on summary judgment. *Robison*, 821 F.2d at 924.

### 2.  Qualified Immunity

Officer Allen contends that he is entitled to qualified immunity because it was not clearly established that striking a person on the upper arm with a baton was prohibited at the time of the incident. Qualified immunity protects a law enforcement officer from civil liability where "(1) his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "[I]f officers of reasonable competence could disagree" whether the actions were lawful, the law enforcement officer is entitled to qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Officer Allen frames the issue incorrectly. At the time of the incident, the prohibition against use of excessive force in conducting an arrest or stop was clearly established. *Graham*, 490 U.S. at 396. As discussed above, a reasonable jury could find that Allen's actions violated that right. Accepting plaintiff's version of events as true, no reasonable officer could find that it was necessary to strike a passive, unresisting person multiple times about the head and risk causing severe injury to that person's face, skull or brain. *Malley*, 475 U.S. at 341; *see also Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 366 (D. Conn. 2008) ("A reasonable police officer should know that swinging a baton at an individual's face while they are facing away from the officer without prior warning would constitute a violation of that individual's right to be free from excessive force."). The court finds that Officer Allen has not established that he is entitled to qualified immunity under the circumstances. *See Higazy v. Templeton*, 505 F.3d 161, 170 (2d Cir. 2007) (explaining that where facts concerning availability of qualified immunity defense are disputed, jury consideration is required).

The motion of the individual defendants for summary judgment on plaintiff's Fourth Amendment claim is denied.

### 3. Fourteenth Amendment Claim

In his complaint, plaintiff alleged that Officer Allen committed a separate violation of plaintiff's substantive due process rights under the Fourteenth Amendment by dragging plaintiff sixty-two feet by his collar while he was handcuffed in deliberate indifference to his medical needs. At the summary judgment hearing, plaintiff conceded that this conduct is more appropriately analyzed under the Fourth Amendment reasonableness standard because the alleged conduct took place during the course of plaintiff's arrest. *See Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989) (holding that under *Graham*, "the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer"). The court therefore grants defendants' motion for summary judgment on plaintiff's Fourteenth Amendment claim against Officer Allen.

### 4. Section 1983 Claims Against the City of Hartford

Plaintiff seeks to hold the City liable for failing to properly supervise Detective Gordon and Officer Allen and for engaging in a "pattern of misconduct to include police brutality and excessive force when dealing with suspects and members of the community."[2] (Doc. 1 at 4-5.) A municipality may not be held liable for the actions of its employees solely on the basis of respondeat superior. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, "[i]n order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). The custom or policy

---

[2] Although plaintiff's complaint alleges that the City "failed to adequately hire, train, supervise, discipline, monitor, counsel, otherwise control and oversee its police officers," thus possibly asserting a failure-to-train claim, in his response to the City's motion for summary judgment he argues only that the City failed to properly supervise its officers. Further, he does not identify any training deficiencies that caused his injuries, as would be required to survive summary judgment on a failure-to-train claim. *See Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006). The court therefore deems any failure-to-train claim to be abandoned.

may be a failure to train or supervise police officers in the proper use of force, where such failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff's two § 1983 claims against the City are really a single claim, then, because together they allege that the City had a policy or custom of failing to supervise police officers that led to the use of excessive force against plaintiff by the officers in this case.

The Second Circuit has identified three requirements that must be met before a municipality's failure to supervise its employees amounts to deliberate indifference to the constitutional rights of citizens. *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (quoting *Harris*, 489 U.S. at 390). "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.* "Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 298. In addition, the plaintiff must show that the municipal policy or custom of failing to provide proper supervision "was the moving force behind the alleged constitutional deprivation." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

An obvious need for more or different supervision "may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann*, 72 F.3d at 1049. The Second Circuit has held that deliberate indifference to the habitual use of excessive force by police officers may be demonstrated by the city's failure to investigate claims of police brutality in order to supervise officers in the proper use of force. *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 326 (2d Cir. 1986). "The operative inquiry is whether the facts suggest that the policymaker's inaction was the result of a "conscious choice" rather than mere negligence." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004).

10

As noted above, plaintiff asserts that the City has failed to adequately supervise its police officers to prevent them from using excessive force, and has engaged in a pattern of using excessive force when dealing with suspects and members of the community. (Doc. 1 ¶¶ 13, 15.) Taken in the light most favorable to plaintiff, the evidence he presents is insufficient for a jury to conclude that the City has been deliberately indifferent to the use of excessive force by its police officers or that such indifference caused the constitutional violation in this case.

In support of his claim, plaintiff points to the 2007 decision by Judge Burns in the *Cintron* litigation. He cites the 1994 Annual Report of the City's Civilian Police Review Board, which noted several incidents of excessive force by police officers, identified problems with the citizen complaint process that made it difficult to properly resolve complaints, and offered recommendations for improving the process. (Doc. 84-6 at 9-13, 18-19.) He also cites a 1999 study by Carroll Buracker and Associates which recommended changes to internal procedures in the HPD. Finally, he points to previous complaints filed against Detective Gordon and Officer Allen, as well as statistics regarding excessive-force claims filed against City police officers from 1998 to 2005.

The evidence provided by plaintiff in this case is nearly identical to that provided by the plaintiff in *Watts v. City of Hartford*, No. 3:00CV0681, 2004 WL 717132 (D. Conn. Mar. 31, 2004). In *Watts*, the plaintiff sued the City for failure to supervise its officers in the use of excessive force after her grandson was fatally shot by a police officer. The plaintiff's claim was based on the 1994 report of the Hartford Civilian Police Review Board, the 1999 Buracker study, and police department records of three prior citizen complaints filed against the officer. One of the complaints alleged that during the course of a traffic stop, the officer had held his gun to the complainant's head for no reason while demanding to see his license.

The court granted summary judgment to the City on the failure-to-supervise claim. *Id.* at *5. Although it found that the plaintiff's submissions supported her allegation that the City and its police chief failed to implement and maintain an adequate system for addressing citizen complaints against the police, the court found that this was inadequate to support her claim of deliberate indifference:

> Plaintiff must provide evidence from which a reasonable juror could conclude
> that, before the shooting at issue here, the City's response to citizen complaints of

11

police brutality demonstrated a policy of negligent supervision that rose to the level of deliberate indifference to officers' use of deadly force in violation of constitutional rights. Further, plaintiff must provide evidence that this repeated failure to discipline other officers was closely related to and actually caused Allan's shooting of plaintiff's decedent. Plaintiff offers no such allegations or evidence.

Instead, plaintiff relies on an alleged pattern and practice of failing to discipline officers in general. The 1994 Board Report provides evidence of the City's failure to discipline officers for excessive force and other civil rights violations, but those incidents predate the incident at issue here by four to five years. The Buracker Study, which addresses the period relevant to [the police officer's] conduct, makes no reference to complaints of unconstitutional conduct or the department's handling of such complaints. Construed most favorably to plaintiff, the Study suggests that there were deficiencies in the citizen complaint process and a perceived lack of discipline. A general policy of lax discipline, assuming it could be proven, does not demonstrate deliberate indifference to serious misconduct rising to the level of unconstitutional acts. To the extent that one complaint lodged and subsequently withdrawn against Allan was improperly classified as "bad judgment," rather than excessive force, a single incident is insufficient to establish a policy of inadequate discipline.

*Id.* at *4-5. The *Watts* court's analysis of the 1994 Board Report and the Buracker Study remains applicable to this case.

Although *Watts* predated Judge Burns's contempt order in *Cintron v. Vaughn*, that decision is of minimal probative value to plaintiff's *Monell* claim. *Cintron v. Vaughn*, No. 3:69cv13578, 2007 WL 4240856 (D. Conn. Nov. 29, 2007). The *Cintron* litigation began in 1969 when a group of Hartford citizens sued various city officials alleging systematic police misconduct and discrimination towards members of racial minority groups. *Id.* at *1. The parties reached a settlement entered by the court as a consent decree in 1973 under which the City agreed, among many other things, to institute a civilian complaint process. (Doc. 84-19). In 1999, the original plaintiffs filed a motion for contempt alleging that the City had failed to comply with this portion of the 1973 consent decree. *Cintron*, 2007 WL 4240856, at *2. The parties reached an agreement, entered as an order of the court in 2004, which put into place a citizen complaint procedure designed to improve the HPD's investigation of citizen complaints alleging police misconduct and to eliminate the backlog of complaints against the HPD. *Id.* The *Cintron* plaintiffs filed a motion for contempt in 2005 alleging that the City had violated the 2004 order. Judge Burns agreed with the special master assigned to the case that the City had

assigned less than the required number of investigators to clear the backlog of citizen complaints
and had delayed training community-based organizations in the processing of complaints. *Id.* at
*6-7. However, she declined to hold the City in contempt for these violations of the order
because the staffing provision had expired and the City had since trained community-based
organizations. *Id.* Judge Burns affirmed the master's finding that the City was in contempt of
the provisions requiring the HPD to complete investigations within certain timelines and to file
written summary reports in response to complaints. *Id.* at *7-8.

At most, the *Cintron* decision, like the Buracker Study, shows that there were problems
with the citizen complaint process, especially concerning the City's commitment to enlarging
and strengthening the process. However, the fact that there were delays in addressing citizen
complaints against the HPD is insufficient to establish that the City had a policy or custom of
failing to supervise its officers in the use of force that caused the alleged constitutional violation
in this case. The backlog of complaints was eventually resolved—albeit more slowly than
contemplated by the 2004 Order—so the City cannot be accused of ignoring citizen complaints.

As in *Watts*, the evidence of complaints against the particular officers in this case is
insufficient to support plaintiff's claim that the City caused his injuries. Two of the three
incidents involving Detective Gordon—shooting a raccoon at his own home with his personal
weapon while on duty in 2003 and threatening another police officer in 2000—did not involve
civilians, and are thus not relevant to this case. The third incident—placing a woman in
handcuffs at a traffic stop—occurred ten years before the events of this case and resulted in
Gordon's being disciplined and receiving remedial training in handcuffing. Officer Allen was
accused of excessive force in 2004 when he struck a civilian in the head with his baton with
enough force to break the baton. (Doc. 84 at 18-19.) However, the complaint was investigated
and Allen was exonerated. The blow to the head was found to be "inadvertent and caused
primarily by the suspect's noncompliance." (Doc. 84-14 at 6.) No force apparently was
involved in the 2006 incident when Officer Allen was accused of entering a residence illegally,
so it also is generally irrelevant to claims of excessive force. (Doc. 84-15.) Finally, there is
evidence that Officer Allen underwent remedial training in 2006 for a separate, unspecified use-
of-force incident. (Doc. 84-16.) A single prior incident which resulted in remedial training is
insufficient as a matter of law to support a claim that the City demonstrated a pattern of

indifference to such conduct. *See Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980), *cert. denied*, 449 U.S. 1016 (1980).

This is not a case like *Vann v. City of New York*, where the police department began receiving complaints of excessive force by a particular police officer almost as soon as he was hired, with nine complaints of assaults and verbal abuse lodged by citizens in a year and a half. 72 F.3d at 1042. The officer was suspended and later reinstated, at which point he assaulted the plaintiff. The evidence in *Vann* showed that the police department had no method to deal with "problem" officers after they were reinstated, and "paid virtually no attention to the filing of new complaints against such officers" even though the new complaints should have been "red-flag warnings" of renewed misconduct. *Id.* at 1050-51. The sheer number of complaints filed against the officer in *Vann* supported the plaintiff's claim of deliberate indifference, as did the failure to follow up on the complaints.

Here, there are relatively few complaints against the officers in question, and all of the incidents were investigated by the City. Some ended in discipline or remedial training. This case is therefore distinguishable from *Vann* and from *Fiacco v. City of Rensselaer*, where the evidence showed that during the two years prior to the plaintiff's arrest, the City's response to five complaints of excessive force—which consisted solely of the police chief's speaking to the accused officer—was "uninterested and superficial." 782 F.2d 319, 331 (2d Cir. 1986). In *Fiacco*, no formal statements were taken from the complainants, no files were created, no notations were made in the officers' files, and no further investigations were made. *Id.* at 331. The court held that this record was sufficient to permit an inference that the City and its police chief were deliberately indifferent to the possibility that excessive force was being used by police officers. *Id.* By contrast, in this case each of the complaints against Detective Gordon and Officer Allen was investigated and resolved, though some of the investigations were slow to be completed. There is no indication that the investigations were superficial or that the City and its police chief "simply did not care what a thorough investigation would reveal." *Id.*; *see also Thomas*, 165 F.3d at 145.

Plaintiff has also provided evidence that from 1998 to 2005, there were eighty-eight complaints of excessive force by Hartford police officers filed with the City, and sixty-five lawsuits involving claims of excessive force. There is no evidence of the facts of these cases, the

outcome in each case, or whether and how thoroughly the complaints were investigated by the City. Nor is there evidence that these complaints involved the officers in this case. Absent such evidence, the numbers alone have minimal probative value.

Plaintiff's expert, David Stothers, opines that the senior management of the HPD has failed to meaningfully review use-of-force cases. However, in his deposition testimony, Stothers stated that he thought the City adequately trained its police officers on use of force. (Doc. 76-8 at 121.) Stothers admitted that other than the incident in which Officer Allen broke his baton, Stothers had no support for his opinion that the City failed to take corrective action to prevent use of force on citizens in general. *Id.* at 123. His opinion of how the HPD reviews excessive-force complaints is based on the method the supervisor in this case used. *Id.* The plaintiff's "personal experience, without more, is insufficient to prove 'deliberate indifference' on the part of the City." *Jenkins v. City of New York*, 478 F.3d 76, 95 (2d Cir. 2007); *Hernandez v. Connecticut Court Support Servs. Div.*, 726 F. Supp. 2d 153, 157 (D. Conn. 2009) (holding that poor investigation of plaintiff's case was insufficient to prove City of Hartford had custom of inadequate training and supervision of police officers that caused constitutional violations).

Elsewhere, Stothers opines that the City's use-of-force policy "falls far below any reasonable standard of care" because "although the policy requires 'contact' with the officers and 'affected persons,' there is nothing in the policy that requires the supervisor conducting the initial use of force investigation to document any of his findings." (Doc. 84-1 at 2-3.) Pointing to the *Cintron* case, he opines that "the HPD has had a long-standing practice of not completing [citizen complaint] investigations within a reasonable time," which "sends a strong message to police officers that their department is unconcerned about these issues." (*Id.* at 3.) He states that HPD has no "early warning system" that would alert supervisors to "possible problem officers." (*Id.*) As noted by the *Watts* court, however, general deficiencies in the civilian complaint process and a perception of lax discipline do not prove that there was a custom of deliberate indifference to the use of excessive force by police officers that led to the constitutional violation in this case.

Stothers states that Officer Allen had eleven use-of-force incidents in the eighteen months leading up to plaintiff's case, "something of which HPD senior management should have been aware." (*Id.* at 4.) Again, no details of these incidents are provided and the statistics alone are

meaningless without context.  He also opines that the incident in which Officer Allen broke a baton over a suspect's head "should have raised a red-flag to HPD management." (*Id.*)  As noted above, this incident was investigated and Allen was ultimately exonerated.  Stothers admitted that he did not see the entire investigation. (Doc. 76-8 at 123.)  The fact that Stothers disagrees with the outcome of the investigation is insufficient to prove that the City was deliberately indifferent to the use of force therein.

Finally, plaintiff argues that "newly discovered evidence," in the form of a ruling in *Archibald v. City of Hartford*, 274 F.R.D. 371, 372 (D. Conn. 2011), another police-brutality case, supports his deliberate-indifference claim. (Doc. 98 at 1.)  In *Archibald*, the court permitted the plaintiff to amend his complaint to add the names of two defendant police officers who were not named originally because the plaintiff did not know their identities.  The court permitted the amendment to relate back to the original complaint because the plaintiff attempted to discover the identity of the officers prior to the expiration of the statute of limitations but the City did not adequately respond to his discovery requests. *Id.* at 382.  Plaintiff argues that "this obstruction [is] further evidence of the municipal defendant's custom and/or policy of failing to properly investigate claims of police misconduct." (Doc. 98 at 1.)  The court is unpersuaded.  The ruling in the *Archibald* case is not "newly discovered evidence."  The decision related to a discovery issue with the attorneys in that case and is not probative of a broader custom or policy by the City of failing to supervise its police officers.

The evidence provided by plaintiff is insufficient to establish that the City had a policy or custom of failing to supervise its police officers in the use of force that actually caused the alleged constitutional violation in his case.  Defendants' motion for summary judgment on plaintiff's deliberate-indifference claim is therefore GRANTED.

### 5.  Eighth and Ninth Amendment Claims

Plaintiff concedes that his claims against all defendants under the Eighth and Ninth Amendments to the United States Constitution must be dismissed. (Doc. 83 at 33.)  Defendants' motion for summary judgment on these claims is GRANTED.

### 6.  Assault and Battery

At the summary judgment hearing, plaintiff conceded that his assault and battery claims were filed after the applicable statute of limitations expired, and must therefore be dismissed. Defendants' motion for summary judgment on these claims is therefore GRANTED.

### 7.  Intentional Infliction of Emotional Distress

Defendants also move for summary judgment on plaintiff's claim of intentional infliction of emotional distress (IIED).  To succeed on an IIED claim, plaintiff must show (1) that defendants intended to inflict emotional distress, or knew or should have known that their conduct was likely to result in emotional distress; (2) that defendants' conduct was extreme and outrageous; (3) that defendants' conduct caused plaintiff's distress; and (4) that plaintiff's emotional distress was severe. *Appleton v. Bd. of Educ. of Town of Stonington*, 757 A.2d 1059, 1062 (Conn. 2000).  "[T]he use of excessive force can establish a claim for intentional infliction of emotional distress." *Betancourt*, 676 F. Supp. 2d at 81.  Because genuine issues of material fact preclude summary judgment on plaintiff's excessive-force claim, defendants' motion for summary judgment on plaintiff's IIED claim is DENIED.

### 8.  Negligent Infliction of Emotional Distress

Defendants argue that plaintiff's claim for negligent infliction of emotional distress (NIED) must fail because he has brought a claim of intentional use of excessive force.  Although pleading in the alternative is generally permissible under Connecticut law, *see Johnson v. Schmitz*, 119 F. Supp. 2d 90, 101 (Conn. 2000), the rule is different in the context of a § 1983 claim based on excessive force.  Courts in this circuit have generally held that where a plaintiff brings claims for excessive force and IIED, "a negligence claim with respect to the same conduct will not lie." *Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000); *see also Betancourt*, 676 F. Supp. 2d at 82 (granting summary judgment on negligence claim where plaintiff brought excessive force and IIED claims); *Frappier v. City of Waterbury*, No. 3:07-CV-1457, 2008 WL 4980362, at *3 (D. Conn. Nov. 20, 2008) (granting summary judgment to defendants on plaintiff's NIED claim because plaintiff also brought claims of intentional use of excessive force and IIED); *Gashi v. Cnty. of Westchester*, No. 02cv6934, 2007 WL 749684, at *8 n.6 (S.D.N.Y. Mar. 12, 2007) ("[A] negligence claim may not be maintained where it is based on

the same objectionable conduct supporting plaintiff's cause of action for excessive force.");
*Mazurkiewicz v. New York City Transit Auth.*, 810 F. Supp. 563, 570-71 (S.D.N.Y. 1993)
("Plaintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an
assault and § 1983 excessive force claim and also argue that defendants were negligent towards
plaintiff. . . . While such a tactic may be appropriate were this a criminal action and plaintiff the
defendant, it has no place in a civil action such as the instant lawsuit.").

Accordingly, defendants' motion for summary judgment on plaintiff's NIED claim is
GRANTED.

### 9.   Violations of the Connecticut Constitution

In his complaint, plaintiff alleges that defendants violated his rights under Article I, §§ 1,
7, 8, 9 and 20 of the Connecticut Constitution.

Defendants argue that they are entitled to summary judgment on plaintiff's claims under
§§ 7 and 9 because defendants' conduct was not "egregious." The Connecticut Supreme Court
has recognized a private cause of action under Article I, §§ 7 and 9 of the Connecticut
Constitution, which prohibit unreasonable searches and seizures and illegal arrests.[3] *Binette v.
Sabo*, 710 A.2d 688, 700-01 (Conn. 1998).  In *Binette*, the plaintiffs alleged that police officers
entered their home without a warrant, threatened the wife with arrest and imprisonment, and
pushed her, causing her to fall against a wall and over a table. The plaintiffs further alleged that
police officers repeatedly slammed the husband's head against a car and struck him in the head
and kicked him while he was lying on the ground experiencing an epileptic seizure. The court
held that the plaintiffs could pursue a damages action under §§ 7 and 9 in addition to their federal
constitutional claims. *Id.* at 697, 698 n.18. The Connecticut Supreme Court "emphasize[d] that
[its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional
cause of action exists for every violation of our state constitution," and that "[w]hether to

---

[3] Article I, § 7 provides: "The people shall be secure in their persons, houses, papers and
possessions from unreasonable searches or seizures; and no warrant to search any place, or to
seize any person or things, shall issue without describing them as nearly as may be, nor without
probable cause supported by oath or affirmation."

Article I, § 9 provides: "No person shall be arrested, detained or punished, except in cases
clearly warranted by law."

recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis." *Id.* at 700.

Connecticut courts have relied upon the "case-by-case basis" language in *Binette* to prevent plaintiffs who were allegedly mistreated during the course of searches and seizures from pursuing claims under §§ 7 and 9 on the ground that the force used in those cases was not "egregious" enough to give rise to a private cause of action under the state constitution. *See Faulks v. City Of Hartford*, No. 308-cv-270, 2010 WL 259076, at *10 (D. Conn. Jan. 19, 2010) (holding that plaintiff who was struck with a baton on the shoulder while officers were attempting to handcuff him could not sue for damages under Article I, § 9 because the case "involve[d] no physical confrontation akin to the level of force at issue in *Binette*" and the level of force used was necessary to effect the arrest); *Martin v. Brady*, 780 A.2d 961, 966-67 (Conn. App. Ct. 2001) (holding plaintiff who was pushed to ground on one occasion and had windows and doors smashed on another occasion during execution of allegedly illegal searches of his home could not sue for damages under Article I, §§ 7, 9); *see also Bauer v. City of Hartford*, No. 3:07-cv-1375, 2010 WL 4429697, at *12 (D. Conn. Oct. 29, 2010) (citing *Faulks* in support of proposition that "[s]ince *Binette*, Connecticut courts have limited private rights of action for Article 1 §§ 7, 9 violations to circumstances involving egregious violations").[4]

The court finds the above cases to be distinguishable. Taken in the light most favorable to plaintiff, the facts of this case are sufficiently egregious to permit plaintiff to pursue a claim under Article I, §§ 7 and 9. The physical confrontation was at least as violent as that suffered by the plaintiffs in *Binette*, and resulted in serious injury to plaintiff. There was no warrant involved, any crime being committed by plaintiff was minor, and plaintiff maintains that he did not attempt to flee or resist arrest. A jury could find that the circumstances of the arrest were so unreasonable that they violated the guarantees of §§ 7 and 9. Defendants' motion for summary

---

[4] Arguably, this is a misreading of *Binette*. In stating that future causes of action must be considered on a "case-by-case basis," the court was clearly referring to violations of other state constitutional provisions besides §§ 7 and 9. Reading the *Binette* opinion as a whole, the court plainly intended to recognize a new, generally available cause of action under §§ 7 and 9 that would operate in parallel with existing remedies under state common law and § 1983. *Binette*, 710 A.2d at 700. There is no indication in *Binette* that the remedy recognized is limited to plaintiffs who suffer unreasonable searches and seizures that are also "egregious."

judgment on plaintiff's claims under these provisions of the Connecticut Constitution is DENIED.

As defendants correctly point out, the Connecticut Supreme Court has not recognized a private cause of action for an alleged violation of Article I, §§ 1, 8, or 20 of the Connecticut Constitution. *See Kelley Property Development, Inc. v. Town of Lebanon*, 627 A.2d 909, 918 (Conn. 1993) (declining to recognize private damages action under Article I, § 8); *see also Coleman v. Town of Old Saybrook*, No. 3:03cv01275, 2004 WL 936174, at *3 (D. Conn. Apr. 28, 2004) (declining to recognize private cause of action under Article I, §§ 1, 8 or 20).  Plaintiff does not argue that the court should recognize such causes of action in this case.  Defendants' motion for summary judgment on plaintiff's claims under Article I, §§ 1, 8 and 20 is therefore GRANTED.

### IV.      Motion in Limine to Preclude Expert Testimony of David Stothers

Defendants move to exclude the expert testimony of David Stothers pursuant to Rules 702 and 403 of the Federal Rules of Evidence. (Doc. 77.)  Defendants do not challenge Stothers's credentials as an expert witness.  Rather, they object to any testimony by Stothers that the use of force in this case was "excessive" or "unreasonable," that the officers in this case violated police procedures, or that the City had a policy or custom of failing to supervise its police officers in the use of force.

Any testimony by Stothers that expresses a legal conclusion or instructs the jury what conclusion to reach—such as an opinion that the officers acted "unreasonably" under the circumstances—will be excluded. *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992).  However, Stothers may testify generally regarding accepted police procedures involving violent arrestees. *See id.* at 365 (noting that such testimony is "unobjectionable").  Defendants correctly note that some courts have held that evidence of police procedures is inadmissible to prove a claim of excessive force. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (holding that police department's general order regarding use of force was properly excluded from trial of plaintiff's excessive-force claim).  However, the Second Circuit has indicated that expert testimony regarding such procedures may be used to assist the jury in deciding whether excessive force was used, and other circuits agree. *Hygh*, 961 F.2d at 364; *see also Parker v.*

20

*Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008) ("The use of expert testimony is permissible in assisting the jury in evaluating claims of excessive force."); *United States v. Perkins*, 470 F.3d 150, 160 (4th Cir. 2006) (holding that district court did not err, in prosecution of police officer for use of excessive force, in admitting expert testimony regarding reasonableness of force used); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908-09 (6th Cir. 2004) (holding district court did not err in admitting expert testimony regarding whether police officers violated nationally recognized police standards in excessive-force case). Subject to any specific objections raised at trial, the court will allow such testimony because it will likely assist the trier of fact in deciding whether the use of force was appropriate in this case. *Hygh*, 961 F.2d at 363-64; *see also Parker*, 547 F.3d at 9 ("[W]hile [expert testimony regarding use of force] is neither required nor always appropriate, expert testimony can be helpful to jurors in explaining police control techniques unfamiliar to many jurors." (citing *Jennings v. Jones*, 499 F.3d 2, 15 (1st Cir. 2007)).

The court has granted summary judgment on plaintiff's *Monell* claims against the City. Thus, any expert testimony on that claim is excluded as irrelevant.

## V.    Conclusion

Defendants' motions for summary judgment (Docs. 75 & 76) are DENIED with regard to plaintiff's Fourth Amendment excessive-force claim as well as his state-law claims for intentional infliction of emotional distress and violations of Article I, §§ 7 and 9 of the Connecticut Constitution. Defendants' motions for summary judgment are GRANTED with respect to plaintiff's § 1983 claims against the City of Hartford, his claims under the Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution and Article I, §§ 1, 8, and 20 of the Connecticut Constitution, and his claims of assault and battery and negligent infliction of emotional distress. Defendants' motion in limine to exclude the testimony of plaintiff's expert David Stothers (Doc. 77) is GRANTED in part and DENIED in part.

Dated this 6th day of April, 2015.

Geoffrey W. Crawford, Judge
United States District Court