UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TYLON C. OUTLAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:07-cv-01769-GWC |
| | ) | |
| CITY OF HARTFORD, DETECTIVE | ) | |
| TROY GORDON and OFFICER MICHAEL | ) | |
| ALLEN, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER RE:
DEFENDANT'S MOTION FOR QUALIFIED IMMUNITY
(Doc. 173)**

This case arises out of an incident on December 17, 2004, in which Plaintiff was injured in the course of an altercation involving members of the Hartford Police Department. In 2007 he filed suit against two of the officers, Detective Troy Gordon and Officer Michael Allen, as well as the City of Hartford. The lawsuit included 42 U.S.C. § 1983 claims, claims arising under the Connecticut Constitution, and common law claims for assault and battery and intentional infliction of emotional distress.

Prior to trial, the court granted summary judgment on the *Monell* claims against the City and permitted the claims against the individual officers to go forward.[1] The court denied Defendants' motion for summary judgment on the issue of qualified immunity because of significant factual disputes concerning the conduct of Defendants and Plaintiff. These disputes required fact finding and were reserved for trial.

The court held a jury trial between January 4 and January 8, 2016. Both parties agreed that the factual and legal issues concerning the availability of qualified immunity would be decided by the court after the verdict.

---

[1] *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978).

The jury found Officer Allen liable for Plaintiff's injuries on the state and federal constitutional claims. He was found not liable on the common law claims. Detective Gordon was found not liable on all claims against him. The jury awarded damages against Officer Allen for $111,803 (past and future medical expenses) and $408,197 (pain and suffering). The parties have stipulated to a reduction of the medical expense award to $46,000 resulting in a net jury verdict in the amount of $454,197.

This decision addresses the issue of qualified immunity. It includes factual findings based upon the trial evidence and a ruling on the legal issues presented by Officer Allen's claim of immunity.

## I.   Burden of Proof

Qualified immunity is an affirmative defense. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Therefore, Officer Allen has the burden of proving by a preponderance of the evidence the disputed factual issues relevant to his immunity claim. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing Fed. R. Civ. P. 8(c)).

## II.   Findings

The court makes the following factual findings on the basis of the trial testimony and exhibits admitted into evidence.

On the evening of December 17, 2004, Plaintiff visited a restaurant on Union Place in Hartford, Connecticut. Earlier in the day he had decided to meet a friend there to talk over possible plans of opening a sandwich shop. He arrived at the restaurant around 10:00 pm and stayed until between 11:30 and 11:45 pm. He left the restaurant and started to walk back to his car, which was parked about two blocks away. He had consumed a beer. He was not intoxicated.

Just outside the restaurant Plaintiff saw a taxi cab double-parked waiting for a fare. He recognized the driver and the driver's front-seat passenger as people he knew. He stopped to talk with them. He stood by the front passenger window, leaning in towards the window with his back to the travelled portion of the roadway. While he was talking, the fare – a man and a

woman – emerged from a pizza restaurant on Union Place. By coincidence, they were also acquaintances of Plaintiff, and he remained beside the taxi to speak with them as well.

At about 11:45 pm, Hartford police officers responded to an unrelated complaint of an assault on Allyn Street near its intersection with Union Place. By the time the officers arrived, neither the victim nor the suspected perpetrator were anywhere to be seen. The two officers who are defendants in this case were among those who responded to that call. Detective Gordon was working in plain clothes in an unmarked police car. Officer Allen was in uniform in a marked cruiser. Both left the scene by car. Officer Allen drove directly behind Detective Gordon. Both made a right turn on to Union Place close to where Plaintiff was conversing with the occupants of the taxi cab.

From his unmarked car, Detective Gordon called out to Plaintiff and ordered him out of the road. The accounts differ on whether he delivered a civil and professional request or whether he used profane language. It is undisputed that he did not identify himself as a police officer. With his back turned to the road, Plaintiff made a dismissive "brush off" gesture. He ignored Detective Gordon and continued his conversation with the occupants of the cab. Plaintiff had no idea that a police officer had directed him to leave the road.

Detective Gordon pulled past the taxi cab, parked, and moved quickly on foot towards Plaintiff. He did not identify himself as a police officer. He carried an unlit flashlight in his right hand. He wore a badge around his neck, which he had pulled out of his shirt. He also wore a winter jacket. The badge was not visible to Plaintiff who still had no idea that the man who had spoken to him from his car and was now moving towards him was a police officer. Rather, Plaintiff saw a stranger approaching him on an unlit street carrying an object that he feared was a gun. He was frightened and continued to stand beside the taxi cab. He turned to face Detective Gordon as the detective approached him.

Detective Gordon kicked Plaintiff in the chest as soon as he reached him. The kick caused no significant injury. Plaintiff was pushed backwards. In the meantime, Officer Allen, who had witnessed these events, got out of his cruiser and pulled out his baton. He came up behind Plaintiff and struck him repeatedly on the head, cutting his scalp each time. The

3

photographs admitted into evidence show three distinct scalp lacerations.  Officer Allen also did not identify himself as a police officer before hitting Plaintiff.

Plaintiff fell to the ground and curled up in a fetal position with his hands seeking to protect his head.  As Plaintiff lay on the ground, Officer Allen struck him again on the right knee with the baton.  Several other Hartford police officers not named in this lawsuit arrived and joined in beating Plaintiff while he lay on the ground.  When the beating stopped, Officer Allen attempted to arrest Plaintiff.  When he saw blood on his baton, Officer Allen called for an ambulance.  Because Plaintiff had suffered a fractured patella, he was unable to walk.  Officer Allen dragged him along the road to the curb where he waited for the ambulance.  An ambulance was already in the area and arrived almost immediately.

Plaintiff was taken to the hospital and admitted.  He underwent surgical repair of his fractured patella, as well as care for the cuts on his head and face.

At trial, each side blamed the other for causing the altercation.  The court finds that Plaintiff's version of the events is more credible.  The critical areas of factual disagreement and the court's resolution of these areas for purposes of its qualified immunity analysis are:

1.  *Who swore at whom*?  Plaintiff and Detective Gordon both blame the other for starting the incident by swearing.  The court finds that Plaintiff did not swear or call out to Detective Gordon.  He did not threaten to harm or assault Detective Gordon.  As Detective Gordon drove past, Plaintiff was occupied in his discussion with his friends in the cab.  When he heard Detective Gordon tell him to get out of the road, he made a dismissive "brushing off" gesture with his hand.  He ignored Detective Gordon until the detective approached him on foot a few moments later.

The evidence is inconclusive as to whether Detective Gordon swore at Plaintiff. Almost 12 years after the event, it is difficult to tell whose version is correct on this point. The court finds that Detective Gordon ordered Plaintiff out of the road.  Whether he accompanied the order with profanity is largely irrelevant.  What is more important for understanding the events that followed is that he and Plaintiff agree that he did not identify himself as a police officer when he ordered Plaintiff out of the road or when he strode up to him.

2. *Did Plaintiff attempt to strike Detective Gordon*?  The court finds that the testimony by Detective Gordon that Plaintiff struck him or, as Officer Allen testified, that Plaintiff grabbed the detective by the coat, pulled him towards him, and punched him, is not credible and not true.  Plaintiff is more credible when he testified that he was accosted by an unknown man on a dark street whom he feared was holding a gun.  Without warning, he was kicked in the midsection by Detective Gordon and then struck from behind by Officer Allen.  This testimony is corroborated by the testimony of witnesses in the cab, as well as the undisputed testimony that it was Detective Gordon who got out of his car and approached Plaintiff without identifying himself as a police officer.

3. *Did Plaintiff fight with Officer Allen*?  Officer Allen's testimony that Plaintiff fought with Detective Gordon and then continued to try to kick Officer Allen after being knocked to the ground by a blow to the head is not credible.  Officer Allen struck Plaintiff at least four times with a police baton – drawing blood with the blows to the head and later breaking Plaintiff's knee.  Plaintiff's version that he was struck from behind by Officer Allen, fell to the ground, attempted to protect his head where he had already been hit, and was then struck on the knee is more credible than Officer Allen's version of the events.

The court reaches its factual determination after observing all three parties, hearing about their experiences and backgrounds, and weighing their motivations to recall the facts in their own favor.  One of the more telling points in favor of Plaintiff's account is that all three parties agree that the officers kicked and hit Plaintiff without identifying themselves first as police officers.  This is more consistent with an encounter prompted by emotion on the part of the officers than a measured application of police tactics and force to subdue an aggressive person.

4. *Did Officer Allen hit Plaintiff hard enough to break his patella*?  There is no doubt that Officer Allen struck Plaintiff hard enough to break his scalp in several locations.  At trial some doubt was cast on the cause of Plaintiff's patella fracture when the treating physician testified on cross-examination that although he believes the patella was broken by a blow from the baton, it could also have happened when Plaintiff fell to the ground. There was no testimony that Plaintiff struck the pavement with his kneecap or that his fall

was actually the cause of the fracture. The jury resolved this issue in Plaintiff's favor when it determined that Officer Allen's conduct was a proximate cause of injury to Plaintiff and awarded all medical bills, past and future, including future knee replacement surgery.

The issue of causation is separate from the issues raised by qualified immunity. The extent of force applied, however, is an issue relevant to qualified immunity. The court finds that Officer Allen – who is a tall, strongly built officer – struck Plaintiff repeatedly with great force. The court finds that the force was sufficient to break the knee because Plaintiff recalled being hit very hard on the knee by a club while lying on the ground and feeling pain. That blow is the most likely source of the patella fracture. The only person known to be using a baton was Officer Allen. At the end of the altercation, Officer Allen's baton was bloody. These facts support a finding that the force applied, particularly the blow delivered after Plaintiff had already fallen to the ground, would have been viewed as excessive by a reasonable officer considering these events in December 2004.

## III.   Analysis

The jury in this case has already made a determination that Officer Allen used excessive force in the course of arresting Plaintiff. The remaining question is whether his actions are protected by the doctrine of qualified immunity. Qualified immunity is distinct from a determination on the merits of whether a constitutional violation took place.

Qualified immunity protects a law enforcement officer from civil liability where "(1) his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (quoting *Harlow*, 457 U.S. at 818). The doctrine relieves an officer from reasonable mistakes about constitutional limits on his use of force. As the United States Supreme Court explained in *Saucier v. Katz*, 533 U.S. 194, 205 (2001):

It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might

correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

The court starts with the arguments advanced by Officer Allen. He argues that the jury's decision that Detective Gordon was not liable means the jury decided that Plaintiff was the aggressor and that he attempted to hit the detective. Officer Allen also argues that the jury's decision that he was not liable for the state law claim of assault and battery means that the jury found that he "reasonably could have believed that the force he used was reasonable and necessary" and the force used was thereby "lawful and . . . justified." (Doc. 173 at 6–8.)

The court rejects those arguments. First, Officer Allen joined Plaintiff in agreeing to submit the factual issues concerning qualified immunity to the court. The court has made its own findings on the facts. Second, there are other plausible explanations for the jury's decision to find one defendant liable and the other not liable, other than finding Plaintiff to be the aggressor. The more likely explanation is that the jury was not persuaded that Detective Gordon *caused* any injury when he kicked Plaintiff as he approached him for the first time. The parties agreed that the kick caused no lasting injury. Whether he kicked Plaintiff again while Plaintiff was on the ground is a matter of dispute. A jury finding of insufficient proof on the element of causation in the claims against Detective Gordon would explain the difference in outcomes between the two defendants.

Finally, the reasons why Plaintiff recovered on the constitutional theories and not on the common law tort of assault and battery are open to fruitless speculation. Officer Allen is correct that the legal theories overlap, but the elements are different and neither the court nor the parties can know what factors caused the jury to find in favor of Plaintiff on one claim and against him on another.

Turning more directly to the elements of qualified immunity, one issue presented is whether Officer Allen violated federal law that was clearly established at the time he acted. Put another way, the issue is "whether it would be clear to a *reasonable officer* that his conduct was

unlawful in the situation he confronted." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quoting *Saucier*, 553 U.S. at 202).

Constitutional claims of excessive force in the course of an arrest are subject to the standards and requirements of the Fourth Amendment, as made clear by the Supreme Court in both *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985) and *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). These cases instruct that while officers may use force in effecting an arrest, the use of force must be reasonable. "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978)). This standard, established by the Court long before now, requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citing *Tennessee*, 471 U.S. at 8–9).

That the law prohibits *excessive* force when using force to make an arrest is neither a recent nor surprising development. Within the District of Connecticut, there are literally hundreds of decisions that articulate this constitutional rule in cases involving police officers. Many of these decisions issued prior to December 2004 when the incident at issue occurred. The court identifies representative cases involving Hartford police officers in order to illustrate that the rule was well-established by December 2004. *See, e.g., Bacchiocchi v. Chapman*, No. Civ.A. 302CV1403JCH, 2004 WL 202142, at *3–4 (D. Conn. Jan. 26, 2004) (Hartford police officer's motion for summary judgment on basis of qualified immunity denied as to excessive force claim); *Jones v. City of Hartford*, 285 F. Supp. 2d 174, 179–80, 183–84 (D. Conn. 2003) (plaintiff claimed he was repeatedly kicked, kneed, and forcibly stripped in course of traffic stop by Hartford police officer and court denied summary judgment on basis of qualified immunity for other officers on scene because these officers had "duty to intervene to prevent excessive force"); *Natale v. City of Hartford*, CIV. No. H-86-928(AHN), 1989 WL 132542, at *1 (D. Conn. Sept. 12, 1989) (Hartford police officer held liable for excessive use of force in arrest of plaintiff).

As these cases demonstrate, it was clearly established by December 2004 that the use of excessive force in the course of an arrest is unlawful. Prior to 2004, Hartford police officers had been sued repeatedly on these grounds and, in each case, the courts consistently articulated the legal standard expressed at the national level in *Garner* and *Graham*: that the force applied by the police must be reasonable in light of the requirements of the situation.

Next, the court considers whether there was something specific about the use of force in this case that would give rise to uncertainty in the mind of a reasonable officer about whether Officer Allen's conduct was unlawful. In other words, could a reasonable officer be mistaken about the permissible limits of force in these particular circumstances? To answer that question it is necessary to return to the particular facts.

A reasonable officer in the position of Officer Allen would have a unique vantage point in this case. He would observe the events unfold from his cruiser parked directly behind Detective Gordon's car. He would see Plaintiff leaning into the cab. He would observe Detective Gordon call out something to Plaintiff although he would not hear the exchange. He would see Plaintiff continue to lean in towards the occupants of the cab. He would see Detective Gordon get out of his car and walk purposefully towards Plaintiff. He would see Detective Gordon kick Plaintiff. In other words, he would see that the original offense committed by Plaintiff was a minor pedestrian violation – in effect, a jaywalking incident. He would see that Plaintiff was facing away from Detective Gordon's car and ignoring him. He would neither see nor hear threats or serious misconduct on the part of Plaintiff. He would see no signs of resistance or aggression by Plaintiff when Detective Gordon confronted Plaintiff. He would not see Plaintiff strike Detective Gordon or pose a threat to Detective Gordon's safety. Instead, he would see Plaintiff being pushed backwards after being kicked in the midsection. At this point, the reasonable officer's viewpoint changes from that of an observer to the viewpoint of a participant. The reasonable officer would see or, in effect, experience Officer Allen's own actions. He would see himself strike Plaintiff on the head from behind. He would then see Plaintiff on the ground, unresisting and protecting his head with his hands. He would see himself continuing to strike Plaintiff with his baton with enough force to fracture Plaintiff's knee cap.

The court is aware that Officer Allen describes the incident differently and alleges that Plaintiff violently attacked Detective Gordon with his fist. For purposes of the qualified

immunity issue, the court does not believe Officer Allen's version of the events. Instead, the court has found that Plaintiff never fought with either officer. The court does not believe Officer Allen's description that Plaintiff continued to struggle and kick at the officers once on the ground. As the factual findings show, it is more likely that Plaintiff's account of curling up and seeking to protect his head is the accurate one.

It is obvious from this description of events that a reasonable officer, armed with the same information as Officer Allen, would have little doubt about the unlawfulness of repeatedly striking an unresisting man with his baton. *See Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 366 (D. Conn. 2008) ("A reasonable police officer should know that swinging a baton at an individual's face while they are facing away from the officer without prior warning would constitute a violation of that individual's right to be free from excessive force"). Once Plaintiff lay unresisting on the ground, the continued use of force was even more clearly unreasonable. *See Rogoz v. City of Hartford*, 796 F.3d 236, 247–51 (2d Cir. 2015) (reversing district court's determination that Hartford police officer was entitled to qualified immunity on summary judgment where officer jumped on unresisting suspect who was lying on the ground). The unreasonableness of the conduct is heightened by the failure of either officer to declare himself to be a police officer before exercising force. *See id.* at 251.

The court concludes that qualified immunity is not available to Officer Allen in light of the facts of this case. A reasonable officer in Officer Allen's position would have seen that Plaintiff had not committed a violent or serious crime. He would have seen that Plaintiff had not attempted to flee or resist. He would have seen Detective Gordon push Plaintiff backwards with a kick. He neither identified himself as a police officer nor heard Detective Gordon do so. Under these facts, and given that Plaintiff posed no threat to the officers or the public safety, striking Plaintiff from behind with a baton and then continuing to strike him as he lay on the ground must be viewed as a clear violation of Plaintiff's Fourth Amendment rights under the law in effect at the time.

**IV.     Conclusion**

The court rules that qualified immunity is not available to Officer Allen given the facts of this case.  The court enters final judgment in favor of Plaintiff.

Plaintiff shall file any affidavit or further submission in support of his claim for attorneys' fees within 14 days of entry of judgment on the docket.  Defendants shall respond within 14 days to any claim for attorneys' fees.  Either side may request an evidentiary hearing on the attorneys' fees issue within 30 days of final judgment.

Dated at Rutland, in the District of Vermont this 12th day of February, 2016.

/s/
Geoffrey W. Crawford, Judge
United States District Court