UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


_____

TYLON C. OUTLAW                    )

           VS                      )   CASE NO: 3:07-CV-01769

TROY GORDON & MICHAEL ALLEN    )

_____)WITNESS TESTIMONY - DAY 4
                          `                TRIAL BY JURY


BEFORE:   HONORABLE GEOFFREY W. CRAWFORD
          DISTRICT JUDGE




APPEARANCES:  ANTHONY P. DiCROSTA, ESQUIRE
                  Mirto, Ketaineck & DiCrosta
                  P.O. Box 428
                  West Haven, Connecticut   06516
                  Representing The Plaintiff




                  RAYMOND J. RIGAT, ESQUIRE
                  Gilbride & Rigat
                  23 E. Main Street
                  Clinton, Connecticut   06413
                  Representing The Plaintiff



                  (Appearances Continued:)

DATE:         January 7, 2016


          TRANSCRIBED BY:  Anne Marie Henry, RPR
                  Official Court Reporter
                  P.O. Box 1932
                  Brattleboro, Vermont   05302

```
1              APPEARANCES CONTINUED:

2

3        NATHALIE FEOLA-GUERRIERI, ESQUIRE
              City of Hartford
4             Office of Corporation Counsel
              550 Main Street
5             Hartford, Connecticut    06013

6

7        WILLIAM J. MELLEY, III, ESQUIRE
              Law Offices of William J. Melley, III
8             250 Hudson Street
              Hartford, Connecticut    06106
9             Representing the Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          INDEX

 2   WITNESS:                                    PAGE:

 3   MICHAEL ALLEN

 4   Cross Examination by Mr. DiCrosta              4

 5   Further Examination by Mr. Melley             11

 6   Further Examination by Mr. DiCrosta           12

 7   Further Examination by Mr. Melley             15

 8

 9

10   DEFENDANT EXHIBITS:

11   E. - Allen Report                            15

12   F. - Allen Supplemental Report               15

13   I. - Complaint                               17

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Previous portion of hearing not requested for

2    this transcript)

3          (The Court opened with the jury present at 9:15

4    a.m.)

5          THE COURT:  Okay.  Officer Allen if you could

6    return to the stand?  And I'll just remind you that you're

7    still under oath from yesterday.

8          THE WITNESS:  Yes, sir.

9          MR. DiCROSTA:  May I approach, Your Honor?

10         THE COURT:  Please.

11         CROSS EXAMINATION BY MR. DiCROSTA:

12   Q.   Good morning.

13   A.   Good morning, sir.

14   Q.   Mr. Allen, how are you today?

15   A.   Fine, sir.

16   Q.   When we left yesterday you had testified, I just want

17   to draw your attention I should say to -- you indicated you

18   pulled your vehicle -- you were following, excuse me, you

19   were, if I can just move the microphone, you were following

20   detective, then Detective Gordon closely behind on Union

21   Place?

22   A.   Yes, sir.

23   Q.   You recall that?  Okay.

24         And then I want to bring you to the point where

25   Detective Gordon, you indicate, leaves his vehicle.  And you

1    testified he left his vehicle and you turned on your rear
2    flashers?
3    A.    Yes, sir.
4    Q.    Okay.  Then you testified that you didn't turn on the
5    front flashers, only the rear flashers?
6    A.    Yes, sir.
7    Q.    And how far is Detective Gordon's vehicle from you at
8    this point?
9    A.    I would have to guess, sir.  I couldn't say.
10   Q.    A car length, two car lengths?  I think you testified
11   it was about a car length ahead of you?
12   A.    No, sir.
13   Q.    Do you recall what you -- I'm asking you then, how far
14   was he -- how far is Detective Gordon's vehicle from your
15   vehicle?
16   A.    I couldn't say.  But I could say that I was to the rear
17   of the taxicab.  I didn't -- I never moved forward once he
18   did.
19   Q.    Okay.  So --
20   A.    I stayed where I was.
21   Q.    You are to the rear --
22   A.    Yes, sir.
23   Q.    -- of the taxicab and Detective Gordon's to the front
24   --
25   A.    Yes, sir.

Q.   -- of the taxi cab?  And you turn on your rear
flashers?

A.   Yes, sir.

Q.   Then you testified Detective Gordon approached Mr.
Outlaw?

A.   Yes, sir.

Q.   And you were getting out of your vehicle?

A.   Yes, sir.

Q.   And you testified by the time -- isn't it correct you
testified that you saw Mr. Outlaw grab ahold of Detective
Gordon?

A.   Yes, sir.  And I saw the fabric actually being pulled
towards Mr. Outlaw.

Q.   Okay.  And then he began -- Mr. Outlaw began striking
Detective Gordon numerous times?

A.   Yes, sir.  With his right, right clenched fist.

Q.   Attempting to pull him down to the ground?

A.   Pulled him towards him like a manner like he wanted
closure to connect.

Q.   And then before he can deliver another blow you struck
him in the right arm with your baton?

A.   Well, if you're freezing the scene, like you would in
an NFL play, where you stop it and you back up two frames,
yes, the hand came back again.  If it came back twice or it
came back three times it -- all I can say is it came back

1  cocked and locked and ready to go again.  Was it the second,

2  was it the third, you're asking me to --

3  Q.   I'm --

4  A.   -- you're asking me to --

5  Q.   I'm asking what you testified to?

6  A.   Correct.  But the realtime when you are freezing a

7  frame was it the second attempt to strike, was it the third.

8  It was, it was subsequent to the delivery --

9  Q.   The initial --

10 A.   -- of the blow following the initial.

11 Q.   So there was at least one blow, one strike?

12 A.   At least one connected.  Yes, sir.

13 Q.   And then somewhere between the second, third strike you

14 attempt -- you hit Mr. Outlaw, you deliver a strike with

15 your baton to his right arm?

16 A.   Yes, sir.

17 Q.   Which had no effect?

18 A.   It had no effect, sir.

19 Q.   Okay.  And then you indicated at this point -- you

20 testified Mr. Outlaw then turned and faced you?

21 A.   He focused his attention towards me.  He turned towards

22 me.

23 Q.   He turned towards you?

24 A.   Yes, sir.

25 Q.   Okay.  Do you recall Attorney Rigat taking your

1  deposition in October, 2008?

2  A.    2008?  Yes.

3  Q.    And you've reviewed that deposition?

4  A.    Say again?

5  Q.    You've been reviewing that deposition?

6  A.    I've looked at it.

7         (Attorneys conferring off the record)

8         MR. DiCROSTA:  One minute, Your Honor?  If I may

9  approach the witness?

10        THE COURT:  Yes.  This is his deposition?

11        MR. DiCROSTA:  His deposition.  Your Honor, I

12 presented the witness a copy of his deposition dated

13 October 9, 2008.

14 Q.    Officer Allen, you recall being put under oath?

15 A.    Yes, sir.

16 Q.    You swore to tell the truth?  Drawing your attention to

17 Page 34?

18 A.    Yes, sir.

19 Q.    You recall being asked by Mr. Rigat, he asked you to

20 describe the scene.  In particular he asked to you describe

21 the two strikes of the baton that you just described now.

22 And he asked you about the first strike and the second

23 strike.  And then he asked you, what happened next after the

24 first strike.  I draw your attention to lines eight through

25 11.  Can you please read that?

1  A.    Line eight?

2  Q.    Line eight, starting --

3  A.    The first strike had no effect.  And the second attempt

4  to strike him in the same location with his arms flailing,

5  the second strike struck Mr. Outlaw in the head.

6  Q.    Please turn to Page 31?

7  A.    Thirty-one?

8  Q.    Page 31.

9  A.    Okay.

10  Q.    You were asked by Mr. Rigat or Attorney Rigat about the

11  specifics throughout your striking of the baton.  In

12  particular he's asking you where Mr. Outlaw was located, or

13  particularly about Mr. Outlaw.  And asked you whether he

14  turned around after the first strike.  You recall that

15  question being asked at deposition?

16  A.    Not without reading the deposition.

17  Q.    Why don't you read lines five through seven or five

18  through eight to yourself.

19  A.    Okay.

20  Q.    So you are asked by Attorney Rigat about the punch.  He

21  asked you what happened next.  Where was Mr. Outlaw with

22  regard to the strike of the second, prior to the second

23  strike of your baton.  And please read out loud lines nine

24  and 10?

25  A.    He never turned around.  After identifying myself he

1  never turned around.  Never looked at me and continued to

2  physically assault Detective Gordon.

3  Q.    Would you read that one more time?

4  A.    He never --

5  Q.    Start at line nine?

6  A.    Line 9.  He never turned around.  Never looked at me

7  and continued to physically assault Detective Gordon.  That

8  was following my identification as a police officer.

9  Q.    No.  No.  I asked you to stop there.  That's all I

10 asked you to read, lines nine and 10.  Read that one more

11 time.  Just read line nine and 10.  That's the question.

12 A.    He never turned around.  Never looked at me and

13 continued to physically assault Detective Gordon.

14 Q.    Okay.  Now, I draw your attention to Page 39, please.

15 A.    Okay.

16 Q.    Attorney Rigat asked you at the deposition about your

17 striking Mr. Outlaw with the baton in general.  In

18 particular, the striking of Mr. Outlaw's leg.  And I ask you

19 to read from Page 39 out loud lines 11 to 14?

20 A.    I believe, based on my report, that Mr. Outlaw was

21 struck twice in the leg.  And at that point Mr. Outlaw was

22 taken, handcuffed and he stopped resisting.

23 Q.    And lastly page 40?

24 A.    Page what?

25 Q.    Please turn to Page 40.  Mr. Rigat asked you about the

specifics as to Mr. Outlaw's action after the striking of
the leg and your actions and how Mr. Outlaw then was removed
from the scene.  I ask you to -- or escorted from the scene.
I ask you to read lines three through 10 on Page 40?

A.   Line 3, he walked, there's a mark mark, got him up.  I
told him we were going over to the cruiser.  So escorting
him to unit nine to put him in the back seat, to put him in
the back.

Q.   When you say he in that statement you're referring to
Mr. Outlaw?

A.   Yes, sir.

Q.   Unit nine is your cruiser?

A.   Yes, sir.

Q.   Please continue at line six?

A.   And then I saw on his head there was some blood.

Q.   Continue, please?

A.   So I immediately called for an ambulance.  And we
stopped right there and just waited for the ambulance.

Q.   Thank you.

     MR. DiCROSTA:  One moment, Your Honor?  No further
questions, Your Honor.

     THE COURT:  Any re-direct?

     MR. SKWRAO:  Very briefly, Your Honor.

     FURTHER EXAMINATION BY MR. MELLEY:

Q.   Officer Allen, can you go back to Page 31 there?

A.   Yes, sir.

Q.   You were asked to read a part of your answer.  Let's go back and read that whole answer starting at line five?

A.   Line five?

Q.   Through 10, five through 10.  You were asked to read lines nine and 10, three times.  Let's read 5 through 10.

A.   Line five starts, punched at Detective Gordon.  And by that time I was out of my car and had my strobe lights on yelling at Mr. Outlaw to stop.  Identified myself as a police officer.  He never turned around.  Never looked at me and continued to physically assault Detective Gordon.

Q.   And that question and your answer involved your conduct and your observations before you had that first strike?

A.   Yes, sir.

Q.   Okay.  So when you said later on, after that second strike he turned towards you, that's a later moment of time?

A.   Yes, sir.

          MR. MELLEY:  Nothing further.

          MR. DiCROSTA:  Maybe I mis-heard you.  May I approach, Your Honor?

          THE COURT:  Sure.  Of course.

          FURTHER EXAMINATION BY MR. DiCROSTA:

Q.   Maybe I mis-heard you yesterday.  Didn't you indicate yesterday, wasn't it your testimony that there was one strike of the baton, you weren't sure you hit him in the

1  head, you turned around and then you hit him again, but you

2  are not sure you hit him in the back of the head, wasn't

3  that your testimony?

4  A.    Say that again, sir?

5  Q.    Wasn't it your testimony that you weren't sure that you

6  hit him in the back of the head?

7  A.    I didn't.

8  Q.    But that's not what you said in 2008 is it?

9  A.    That was 2008.  I've had three days of eight hour

10 sessions.  If I didn't recall anything that would be a

11 problem.

12 Q.    2008, when you wrote your report?

13 A.    Correct.  And in my report I stated --

14 Q.    2008 was a lot closer to the incident --

15 A.    Right.  But I --

16        THE COURT:  One at a time, okay?  Ask your

17 question and give an answer.

18        MR. DiCROSTA:  There's no question pending so I'll

19 rephrase the question.

20 Q.    You were sworn in at this deposition?

21 A.    Yes, sir.

22 Q.    You were told to tell the truth?

23 A.    Yes, sir.

24 Q.    Okay.  2008 was a lot closer to 2004 wasn't it?

25 A.    Correct.

1   Q.   It's fair to say when you wrote your report the next

2   day you immediately -- the incident happened the day before,

3   correct?  Is that correct?

4   A.   Yes, sir.

5   Q.   You have to answer audibly.

6   A.   Yes.

7   Q.   And then you said you sat here for three, eight hour

8   sessions?

9   A.   Yes, sir.

10   Q.   Listening to the evidence as it came in?

11   A.   Yes, sir.

12   Q.   And now you recall that perhaps he turned to you?

13   A.   No, he did turn to me.

14   Q.   Okay.  You're sure of that now?

15   A.   He changed his focus on Detective Gordon and turned

16   towards me.

17   Q.   And you had that epiphany in the last three days?

18   A.   No, that was from day one.

19   Q.   That's not what you said in 2008, correct?

20   A.   Okay.

21   Q.   That's not what you put in your report, is that

22   correct?

23   A.   I don't have my report in front of me.

24   Q.   May I approach, Your Honor?  I'm sorry, I'm showing you

25   what's been marked as Exhibits E. and F..  I believe E. is

1   your report?

2   A.   Yes, sir.

3   Q.   And F. is your supplemental report?

4   A.   Yes, sir.

5   Q.   Can you tell me where you indicate in those reports

6   that Mr. Outlaw turned to engage you as you testified

7   yesterday?

8   A.   Yes, sir.  It would be between where the blows had the

9   desired effect and the accused was brought to the ground.

10  In the act of being brought to the ground the accused turned

11  to the right as he was going down towards me.

12  Q.   By turning to the right, that's where he engaged you,

13  when he was going down to the ground?  That's your

14  testimony?  That's what you just stated?

15  A.   Yes, sir.  If you want to go frame by frame -- that's

16  correct.

17  Q.   The report speaks for itself?

18  A.   Yes, it does, sir.

19  Q.   That's your claim?

20  A.   Yes, sir.

21          MR. DiCROSTA:  Nothing further, Your Honor.

22          FURTHER EXAMINATION BY MR. MELLEY:

23  Q.   Officer Allen, in the report that you just reviewed,

24  after the two blows to the arm, you indicated one

25  unintentionally struck his head, is that right?  That's what

1  your report says?

2  A.    Yes, sir.  While walking him --

3  Q.    No, I understand that, but that's what it says?

4  A.    At the scene of the injury I assumed that I did it.

5  Q.    And then you say in your report that that strike had

6  accomplished the desired effect and he went down, but he

7  continued to fight?

8  A.    Yes, sir.

9        MR. DiCROSTA:  Objection.  This goes beyond

10 re-cross.

11       THE COURT:  I'll allow it.

12 Q.    That's that same sentence that you just read a part of

13 in this report, that he continued to fight?

14 A.    Right.

15 Q.    Is that correct?

16 A.    Yes, sir.

17 Q.    And who is he fighting with at this stage?

18 A.    Me.

19 Q.    And you put that in the report the day of the incident?

20 A.    Yes, sir.

21       MR. MELLEY:  Nothing further.

22       MR. DiCROSTA:  One moment, Your Honor?  Your

23 Honor, no further questions.

24       THE COURT:  All right.  Anything further?

25       MR. MELLEY:  Nothing further of Officer Alle.

1           THE COURT:  You are excused, officer.  Thank you.

2           THE WITNESS:  Yes, sir.

3           MR. MELLEY:  I put it out so I could find it

4    easily.

5           THE COURT:  It's always the way.

6           MR. MELLEY:  Your Honor, I wanted to offer as a

7    judicial admission the specific paragraph in the complaint

8    that brings us together.

9           THE COURT:  Any objection?

10          MR. RIGAT:  No objection.

11          THE COURT:  Let's mark it and then I'll admit it.

12          MR. MELLEY:  I think, based upon our discussion,

13   it wasn't going in, I was just going to read it.

14          THE COURT:  I think that was the plan, yeah.

15          MR. MELLEY:  So do we need to have it marked then?

16          THE COURT:  Yes.  It should have a home in the

17   file.  We'll mark it for identification.

18          MR. MELLEY:  I have stickers.  So what would the

19   next letter be?

20          THE CLERK:  I.

21          MR. RIGAT:  Your Honor, if it's easier we have no

22   objection for the complaint to be marked as a full exhibit

23   and the jury is free to read the complaint.

24          THE COURT:  All right.

25          MR. MELLEY:  No, I don't agree to the whole

1    complaint.  I just want the one.  That's all I'm offering.

2            THE COURT:  That's the part you'll put in.   If

3    there's any rebuttal we'll take up that issue at that time.

4            MR. RIGAT:  Yes.

5            MR. MELLEY:  So this is Exhibit I. for

6    identification.  This is a complaint dated November 29,

7    2007.  Paragraph five.  Upon seeing Detective Gordon kick

8    Outlaw, Officer Allen exited his vehicle.  Outlaw attempted

9    to step back and was struck by Officer Allen in the back of

10   the head with a blunt weapon.  Outlaw fell to the ground.

11   Was dragged by Officer Allen and Detective Gordon between

12   vehicles and severely beaten.

13           Officer Allen struck Outlaw in the right knee with

14   a blunt weapon with such force that Officer Allen fractured

15   Outlaw's right knee.  Outlaw also suffered severe contusions

16   and lacerations to his head and face as a result of this

17   outrageous beating.  That's all I have.

18           THE COURT:  All right.  The defense rest?

19           MR. MELLEY:  The only exhibit I haven't, I can

20   perhaps do this, I know that we discussed it and I don't

21   recall if we actually marked the ambulance report as an

22   exhibit.  I think we can take that up at the break.

23           THE COURT:  Okay.

24           MR. MELLEY:  But assuming that, yes.

25           THE COURT:  Correct.  Any rebuttal?

1          MR. RIGAT:  No, Your Honor.

2          THE COURT:  Okay.  Ladies and gentlemen, that

3    concludes the evidence in the case.  I need about 20 or 30

4    minutes with the lawyers.  After that both sides will have a

5    chance to give their closing arguments.  I'll deliver a jury

6    charge regarding the law which you are to apply.  And by

7    middle of the day I think you'll have the case for

8    deliberation.

9          We've ordered lunch for you because once, you

10   belong to us once you're deliberating we feed you.  It's not

11   great, but it's something.

12         So at this point I'll excuse you for 20, 30

13   minutes and catch up with some work with the attorneys and

14   bring you back in for closing arguments.  Okay.

15         (The Jury was excused at 9:40 a.m.)

16         (This concludes the portion of the hearing

17   requested for this transcriipt)

18

19

20

21

22

23

24

25

                    C E R T I F I C A T E

         I, Anne Marie Henry, Official Court Reporter for
the United States District Court, for the District of
Vermont, do hereby certify that the foregoing pages are a
true and accurate transcription of my shorthand notes taken
in the aforementioned matter to the best of my skill and
ability.

                    _____
                         Anne Marie Henry, RPR
                         Official Court Reporter