UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

TYLON C. OUTLAW                    )

          VS                       )    CASE NO: 3:07-CV-01769

TROY GORDON & MICHAEL ALLEN    )           TAPED
_____)    TELEPHONE CONFERENCE


BEFORE:    HONORABLE GEOFFREY W. CRAWFORD
           DISTRICT JUDGE



APPEARANCES:   ANTHONY P DiCROSTA, ESQUIRE
                   Mirto, Kataineck & DiCrosta
                   P.O. Box 428
                   West Haven, Connecticut    06516
                   Representing The Plaintiff



               RAYMOND J. RIGAT, ESQUIRE
                   Gilbride & Rigat
                   23 E. Main Street
                   Clinton, Connecticut    06413
                   Representing The Plaintiff

               (Appearances Continued:)


DATE:         December 23, 2015


         TRANSCRIBED BY:  Anne Marie Henry, RPR
                       Official Court Reporter
                          P.O. Box 1932
                       Brattleboro, Vermont    05302

```
 1                    APPEARANCES CONTINUED:

 2


 3           NATHALIE FEOLA-GUERRIERI, ESQUIRE
                   City of Hartford
 4                 Office of Corporation Counsel
                   550 Main Street
 5                 Hartford, Connecticut   06013

 6


 7           WILLIAM J. MELLEY, III, ESQUIRE
                   Law Offices of William J. Melley, III
 8                 250 Hudson Street
                   Hartford, Connecticut   06106
 9                 Representing the Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (The Court opened at 3:07 p.m.)

2          THE COURT:  I want to talk with you for a minute,

3   just so you can help me understand one thing.  And I found

4   after I scheduled the conference that it's also addressed in

5   one of the defendant's motions in limine, which is, I'm not

6   entirely clear as to whether any claim remains for trial

7   against the City of Hartford.  I don't see one.

8          I see the city as having been let out on the

9   interlocutory summary judgment order, which hasn't been

10  reduced to a final partial judgment or anything like that,

11  with respect to the, you know, the municipal claims.

12          And in the event of an appeal the plaintiff could

13  certainly take that issue up, along with any others that

14  arise out of the trial.  But does the plaintiff see any

15  remaining claim against the city?  I think we can rule out

16  responding superior doesn't apply.  And I don't see any

17  other basis for informing the jury that the city was

18  previously a party or having the city's counsel sit at the

19  table or in any way involving the city.  But I wanted to

20  hear from you guys about it.

21          MR. RIGAT:  Judge, this is Ray Rigat.  And I think

22  your understanding is correct.  And I think technically,

23  when we brought the complaint, a lot of the counts were

24  directed at both sets of defendants.  And I think it's just

25  a technicality that Hartford -- I think when I read your

order, certainly it's directed at -- the Monell claims

against the city are certainly out.  I think, just in terms

of the practical reality I think the City of Hartford is

out.

I don't recollect -- I think the supplemental

state law claims, technically the city is still in, but

certainly they've been brought as intentional acts.  And, I

mean, you know, they are not going to have liability for

that, as I understand it.

THE COURT:  Okay.  So from the plaintiff's

perspective, and we're not on the record in the sense, we're

just -- I'm not recording this, so I'll, you'll remind me

and I'll remember to get this on the record in Connecticut,

but from the plaintiff's perspective you're not seeking to

file any remaining direct claims against the City of

Hartford?

MR. RIGAT:  No.  No.  I can tell you, you know, I

think technically they weren't right out.  But I don't think

that was -- I mean, we're not going to, we're not going to

be jerks about it.  I think, you know, I understand that the

remaining, you know, the state law claims are really

directed at the two police defendants.

THE COURT:  Yeah, that's how I saw it too, but I

just wanted to get it straight before we got, you know, into

the jury draw.

1          Does the City of Hartford see it the same way?

2          MS. FEOLA-GUERRIERI:  Absolutely, Your Honor.

3          THE COURT:  So, I mean, you are welcome to come,

4  but you don't even need to, all right?

5          MS. FEOLA-GUERRIERI:  Well, I am a municipal

6  employee with the City of Hartford Corporation Counsel.

7  This involved two officers that we employed.  And I would

8  like to participate to the extent of sitting at the counsel

9  table assisting where I can, but obviously the trial will be

10  handled by Attorney Melley.

11          I would like to be present in attendance with the

12  exception of our January 5th morning, which has now been

13  converted from a jury selection on another case that I have,

14  to an in-person conference with Judge (unintelligible).  So

15  with that exception I would like to attend and be present

16  for all proceedings in this case.

17          THE COURT:  And how do you want to be introduced?

18  I mean, in what role?

19          MS. FEOLA-GUERRIERI:  Just counsel, corporation

20  counsel, Attorney Guerrieri from the applicable corporation

21  counsel.

22          THE COURT:  All right.  Without any sort of

23  comment on --

24          MS. FEOLA-GUERRIERI:  Correct.

25          THE COURT:  Does that work for the plaintiff?

1     MR. RIGAT:  I mean, certainly, you know, Attorney

2 Guerrieri can sit in as, you know, in the spectator gallery.

3 And, I mean, it's a trial that's open to the public, but, I

4 mean, it seems kind of odd.

5     THE COURT:  It's a little odd to me that

6 somebody's whose been let out on summary judgment is still

7 there at the, at the table.  And what I don't want to

8 stumble into is some confusion on the jury's part about who

9 the defendants are.  They are these two guys as individuals.

10     MS. FEOLA-GUERRIERI:  I, I'm a little more than

11 just a spectator, with all due respect.  I, you know, I have

12 participated in the proceedings to date.

13     As Your Honor has indicated, there is a potential

14 appeal that may occur.  And if something arises, as the

15 corporation counsel for the City of Hartford assigned to

16 represent the Hartford Police Department and its members,

17 generally speaking in matters of procedure, administrative,

18 I could be of assistance.  And I'd like to be at the table.

19     THE COURT:  So, if she's at the table is there a

20 way that the plaintiff, we can introduce her and explain her

21 presence to the jury?  Just, for example, as another lawyer

22 from another firm without -- is there a way to thread the

23 needle here?

24     MS. FEOLA-GUERRIERI:  That's how I felt, Your

25 Honor, simply being introduced as an attorney with the

1   Office of the Corporation Counsel.

2         THE COURT:  Well, that suggests, you know, to

3   someone with some experience on the jury, that somebody

4   other than the two defendants is a party here.  That's what

5   I'm a little sensitive to.  And if I don't get a stip. to

6   that then I'm sort of left in a bit of a pickle.

7         Forgive me, are you with a private firm?

8         MS. FEOLA-GUERRIERI:  Am I, Your Honor?

9         THE COURT:  Do you work directly for the city all

10  day long or are you with a law firm?

11        MS. FEOLA-GUERRIERI:  No, I am not at a law firm.

12  I'm a municipal employee for the Office of Corporation

13  Counsel working at city hall.  You know, we have -- we're

14  established by charter.  It's part and parcel of the

15  departments of the City of Hartford.

16        THE COURT:  How about if we just -- how many

17  defense attorneys will we have?  It's Mr. Melley, right?

18        MR. MELLEY:  Just me, Your Honor.

19        THE COURT:  So how about if I just introduce the

20  two of you by your, by your surnames and just leave it at

21  that?  That there are two attorneys who are involved in the

22  defense of this case and what, two attorneys for the

23  plaintiff?

24        MR. RIGAT:  (Unintelligible)

25        THE COURT:  That work for the plaintiff?

1          MR. RIGAT:  Yes.

2          THE COURT:  That work for the defense?

3          MR. MELLEY:  That makes sense.

4          THE COURT:  Okay.

5          MS. FEOLA-GUERRIERI:  That's fine with me, Your

6     Honor.

7          THE COURT:  Okay.  And then the jury instructions

8     and the opening and the closing all will be silent, I take

9     it, as to the previous role of the City of Hartford as a

10    defendant, we'll just leave them out; is that right?

11         MS. FEOLA-GUERRIERI:  Absolutely.  I would request

12    that Your Honor, yes.

13         THE COURT:  And that's what the plaintiff wants as

14    well?

15         MR. RIGAT:  Yes, Your Honor.  That make sense to

16    me.  And I certainly don't have an objection to Attorney

17    Feola-Guerrieri sitting at the table and handing documents,

18    if she wants to speak with, you know, Attorney Melley that's

19    fine.  I just -- but I do think there needs to be some

20    limitations on participation and conferring in the matter.

21         THE COURT:  Yeah, I don't think -- you don't want

22    to take a turn questioning witnesses do you?

23         MS. FEOLA-GUERRIERI:  Oh, absolutely not, Your

24    Honor.

25         THE COURT:  Yeah.  No, it's fine.  And I --

1    MS. FEOLA-GUERRIERI:  It's really Attorney

2 Melley's case at this point.

3    THE COURT:  Yes.  And I respect that too.  And I

4 didn't want to leave you out.  I just mostly didn't want to

5 create a confusion in any juror's mind about the lineup of

6 the defendants.  So we'll just introduce you by your first

7 and last name as assisting Mr. Melley.

8    MS. FEOLA-GUERRIERI:  That's fine, Your Honor.

9    THE COURT:  Okay.  That answers my concerns.  And

10 I sort of brought it up the last minute just before the

11 holiday break, but it will make drafting the charge a lot

12 easier.

13    Did you guys have anything else you needed to

14 bring up?  There was a little witness trouble?

15    MS. FEOLA-GUERRIERI:  Your Honor, if I may, prior

16 to going to the last issue?

17    THE COURT:  Sure.

18    MS. FEOLA-GUERRIERI:  With regard to entering

19 something on the docket, could the city expect that the

20 Court then enter judgment in favor of the city prior to --

21 in accordance with the summary judgment ruling?

22    THE COURT:  My plan was to do it all at once after

23 the jury verdict.

24    MR. RIGAT:  Your Honor, that's my understanding of

25 The Federal Rules because that --

1          MS. FEOLA-GUERRIERI:  Okay.  That's fine.

2          MR. RIGAT:  -- if we decide to even take an appeal

3     of the dismissal on the Monell claim we do it then.

4     (Unintelligible) If it was the other way around we'd have

5     the notice of appeal.

6          THE COURT:  Right.  No.  This way every issue will

7     have the same timeframe.  There will be no confusion about

8     when the case ended.  And however the jury case comes out,

9     the judgment will reflect that, you know, on the basis of a

10    prior summary judgment order of X date all claims against

11    the City of Hartford were dismissed.

12         MS. FEOLA-GUERRIERI:  Okay.  Thank you, Your

13    Honor.

14         MR. RIGAT:  Thank you, Judge.

15         THE COURT:  All right.  Anything else we can clear

16    up?

17         MR. RIGAT:  Well, the only other issue now, Judge,

18    is the, our expert witness.  His attorney has indicated to

19    us, and we now have a letter, that they are going to file a

20    motion to quash our subpoena.  You know, (Unintelligible).

21    You know formal dates etcetera, etcetera.  And we finally

22    got it yesterday, contacted by his attorney.  They don't

23    want him to actually have to come to the Court.  But he's

24    willing to participate in a video deposition.

25         Now, we're not going to insist that you require

1 his attendance, but I think it looks to me like Jay and

2 Nathalie, the city's attorney, (Unintelligible)

3       THE COURT:  Sure.  Mr. Melley, is that okay?  You

4 guys want to do a video deposition in place?

5       MR. MELLEY:  Well, Your Honor, the doctor's time,

6 he doesn't want to come in on the 4th, which is the first

7 day of jury selection.  Although, that's a potential.  But

8 he would prefer Tuesday as long as he's done at 9 a.m..  And

9 it's (Unintelligible) before the start time.

10       THE COURT:  He'll be in his scrubs ready to go.

11       MR. MELLEY:  Yeah.  Normally in the morning I'm

12 not cranky, but by the end of the day, you know, if we were

13 to start at 5, you know, it's going to take however long to

14 get there, that's going to be a very long day.

15       THE COURT:  Yeah, sure.

16       MR. MELLEY:  Very difficult.  You know, I don't

17 know.  I'm willing to do what the Court suggests, but, you

18 know, I don't know, a 5 o'clock start of a deposition during

19 the course of a trial where we learn about this date, or

20 whatever, I'm not sure what the confusion is from the

21 doctor's perspective as to why he wasn't lined up earlier

22 and, you know, whatever.  I mean, --

23       THE COURT:  They are always difficult.

24       MR. RIGAT:  He's just being difficult.

25       THE COURT:  Yeah.  Yeah.  They are often a little

1    cranky about this when push comes to shove.  How about I

2    just order, how about I just put out just a plain vanilla

3    order saying it will be done the first or second trial date

4    after normal business hours, after 5 o'clock?

5              MR. RIGAT:  He did indicate, Your Honor, that if

6    necessary he can actually do it after 5 on January 4th.  And

7    so, you know, we could -- I mean, and he's right local.

8    He's in the Hartford area.

9              THE COURT:  Right.  So we could let you guys out

10   at 4 and you could trudge off and put it on the tape?

11             MR. RIGAT:  Sure.

12             THE COURT:  If he's willing you don't even need an

13   order from me.  Why don't you just march ahead with that

14   plan.  We'll stop early enough to let you get out there with

15   a court reporter and a video, and this will be, what, about

16   an hour and a half or something?

17             MR. RIGAT:  I don't even think --

18             MR. MELLEY:  Yeah, about that.  About that.

19             MR. RIGAT:  I don't want to exaggerate the length

20   of it, but I don't want to tell you it's going to be 20

21   minutes when we're there, you know, an hour.

22             THE COURT:  Yeah.  (Unintelligible)

23             MR. MELLEY:  Your Honor, I don't think it's as

24   simple.  I mean, he has said a lot of things.  He was

25   deposed in 2010.  And he's come up with, you know, so I

1    don't know.  An hour and a half is tight.

2              THE COURT:  I mean, I'm not limiting it.  Knock

3    yourselves out.  It's --

4              MR. MELLEY:  All right.

5              THE COURT:  It's awful for the jury to sit there

6    for a half day and watch a screen, but that's your judgment,

7    not mine.

8              MR. MELLEY:  I just didn't want a limit.

9              THE COURT:  No.  No.  No.  I was just sort of

10   speaking practically.  No.  No.  Take all the time both

11   sides need and have at it so we don't, I certainly don't

12   want to create an issue that somebody didn't get to ask all

13   the questions they wanted.

14             MR. RIGAT:  Of course.  That day, if we don't get

15   out in an hour and a half the pizza's on you.

16             MR. MELLEY:  Yes.

17             THE COURT:  All right.  So we'll just plan to kick

18   you out of the courthouse at 4 and you can scamper over and

19   get the doctor's depo done then.

20             MR. MELLEY:  Your Honor, if I may ask

21   (Unintelligible) a number of issues that have been

22   confronted to the Court.  We're going to have the jury

23   selection.  You know, after the jury is picked, however long

24   that takes, you know, if it's one hour or two hours or even

25   potentially, I have no idea, but when do we resolve our -- I

1  mean, with regards to the pending motions, would Your Honor

2  be inclined to deal with that post-jury selection before

3  evidence or are we going to be talking next week or --

4          THE COURT:  We probably won't be talking next

5  week.  It's such a goofy week with the holiday.  What I had

6  hoped that would happen is we would take an hour and a half

7  or so on jury selection.  Let the jurors out for, you know,

8  a long lunch at 11, 10:30 and take some time.

9          Most of the -- a lot of the issues look like

10 things that are going to have to be resolved basically on

11 the basis of what the foundation in the middle of the trial

12 is, but some of them could benefit from some hearing

13 beforehand.  But I didn't think more than an hour was really

14 going to be consumed.  And then openings at 1 like that.

15 That make sense?

16          MR. MELLEY:  That's going to be a short day.  I

17 mean, we're going to have the openings and then --

18          THE COURT:  Right.

19          MR. MELLEY:  And then if we stop at 4.

20          MS. FEOLA-GUERRIERI:  It's too bad that Dr. Lena

21 couldn't be deposed prior to 5 p.m. on the 4th.

22          THE COURT:  Is there any other day offered, you

23 know, like New Year's eve or something?

24          MR. RIGAT:  No, Your Honor.  (Unintelligible)

25          MR. DiCROSTA:  The problem with the 4th and the

5th is apparently he has surgery all day long.  Although he
seems to be difficult, we don't want to impose on the
surgery schedule.  And it's my understanding that he's been
in surgery since Thanksgiving until his vacation time.

THE COURT:  All right.  All right.  Well, he
probably starts kids in college like everybody else.  Let's,
we'll, I'll find time as best we can on the first day to
give you time to put those issues on the table, but I'm
sensitive too to getting this thing going and not, and
completing more than the openings on the Monday.  So let's
see how quickly we can get the jury drawn.  I talked more
with Judge Hall, who tells me you guys will fall over in a
dead faint if you're given any latitude at all to ask
questions on voir dire.  It's, she reports that the state
system is so generous that the federal judges have rebelled
or reacted by basically closing off attorney voir dire
totally.

MR. RIGAT:  And can I say on something like this,
you'd be three or four days on jury selection.

THE COURT:  On the state side?

MR. RIGAT:  Yes.

THE COURT:  Right.  Right.  Yeah.  We are usually
not as, even on the state side, this would be an hour and a
half max or two for the lawyers to conduct the voir dire.

So what I'm getting at is, we'll see if we can't

1  get it done really quickly, take a short amount of time to

2  talk about those issues that really have to, in limine that

3  have to be decided before openings, which aren't many of

4  them.  And leave the others.  And get as much done as we

5  possibly can before you have to head out for Dr. Lena.  It

6  will be fine.  We'll make it work.

7            MR. RIGAT:  Sounds like a plan.

8            THE COURT:  Anything else?  This thing's going to

9  go?  I mean, I was, I had my doubts for a while.  It might

10 not have been a case I would have tried, but everybody sees

11 it differently.  It looks like you guys are going to do it?

12           MR. MELLEY:  For me, Your Honor.  This is Jay

13 Melley.  I have no control.  There's a demand, there's an

14 offer.  (Uninteligible)

15           THE COURT:  Yeah, no, that happens.  If it changes

16 you'll let me know.  But in the meantime I'll get back to

17 sorting out, sorting out the charge.  And I'm grateful for

18 the two proposed charges that I got.

19           I had one question, maybe there's a short answer

20 too, with respect to the state immunity issues, on the

21 federal side it's pretty clear that the majority of the

22 Second Circuit cases say the judge gets some help from the

23 jury on qualified immunity with special interrogatories

24 addressed towards factual issues.  Ultimately the judge

25 makes that call.  It's not really, it's a legal defense

1   that, you know, that doesn't get submitted to the jury

2   except that they'll be asked to answer specific facts.

3           Is there a short answer on the state side to who

4   makes the state immunity law determination?  How does the

5   plaintiff see it?

6           MR. RIGAT:  Your Honor, I actually never looked at

7   it from the state court side of that.

8           THE COURT:  How about you?

9           MR. RIGAT:  I don't know.

10          THE COURT:  Okay.  The defense?

11          MR. MELLEY:  It seems to make sense that it's a

12  legal issue, Judge.

13          MS. FEOLA-GUERRIERI:  I have not also, Your Honor,

14  but in my experience I've seen it briefed as a legal issue

15  to be decided by the Court.

16          THE COURT:  In the same way that the 1983

17  qualified immunity tends to get determined by the Court?

18          MR. RIGAT:  Right.

19          MR. MELLEY:  Right.

20          THE COURT:  So should we do the same thing, which

21  is I'll try to identify a factual question for the jury and

22  get an advisory type response from them and then answer the

23  question one way or the other?

24          MR. RIGAT:  The plaintiff has no objection to

25  that, Your Honor.

1          MR. MELLEY:  Yeah, that makes sense, Your Honor.

2          THE COURT:  Well, you probably --

3          MR. MELLEY:  We're just talking about the

4    immunity, yes.

5          THE COURT:  Just the immunity.  Okay.  So I'll

6    address them both in that way.  That's helpful.  I won't

7    bind you until you see the question, right, but at least I

8    think the approach seems sensible.

9          Good enough.  That will save me thrashing around

10   in the Connecticut Reports trying to find an answer.  Good

11   enough.  I'll let you go unless there's anything else that

12   we can expedite.

13         MR. RIGAT:  All right.  Thank you, Your Honor.

14   And everybody have a happy holiday.

15         THE COURT:  Yes.  Same to you all.

16         MS. FEOLA-GUERRIERI:  Thank you, Your Honor.

17         THE COURT:  Thanks for your cooperation.

18         (The Court recessed at 3:27 p.m.)

19

20

21

22

23

24

25

C E R T I F I C A T E

     I, Anne Marie Henry, Official Court Reporter for the United States District Court, for the District of Vermont, do hereby certify that the foregoing pages are a true and accurate transcription, TO THE BEST OF MY ABILITY, of the TAPED PROCEEDINGS in the aforementioned matter to the best of my skill and ability.

_____

Anne Marie Henry, RPR
Official Court Reporter