UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

TYLON C. OUTLAW                    )

            VS                     )   CASE NO: 3:07-CV-01769

TROY GORDON & MICHAEL ALLEN    )

_____)  JURY QUESTIONS & VERDICT
                                        AT TRIAL BY JURY


BEFORE:   HONORABLE GEOFFREY W.. CRAWFORD
          DISTRICT JUDGE



APPEARANCES:  ANTHONY P. DiCROSTA, ESQUIRE
                    Mirto, Ketaineck & DiCrosta
                    P.O. Box 428
                    West Haven, Connecticut   06516
                    Representing The Plaintiff



                    RAYMOND J. RIGAT, ESQUIRE
                    Gilbride & Rigat
                    23 E. Main Street
                    Clinton, Connecticut   06413
                    Representing The Plaintiff

                    (Appearances Continued:)

DATE:       January 8, 2016



        TRANSCRIBED BY:  Anne Marie Henry, RPR

                    Official Court Reporter
                     P.O. Box 1932
                    Brattleboro, Vermont   05302

1                    APPEARANCES CONTINUED:

2

3         NATHALIE FEOLA-GUERRIERI, ESQUIRE
               City of Hartford
4              Office of Corporation Counsel
               550 Main Street
5              Hartford, Connecticut   06013

6

7         WILLIAM J. MELLEY, III, ESQUIRE
               Law Offices of William J. Melley, III
8              250 Hudson Street
               Hartford, Connecticut   06106
9              Representing the Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The Court opened at 9:00 with the jury present)

2          THE CLERK:  We are in the matter of Tylon Outlaw

3     versus Troy Gordon and Michael Allen, case number

4     3-07CV-01769.

5          THE COURT:  All right.  At the end of the

6     afternoon we received a note from the, from the jurors

7     asking for a read back of the testimony of Sergeant Gordon

8     and Officer Allen.  And we'll proceed to do that.  The way

9     it works is the court reporter will read the questions and

10    answers.  Kind of like a person reading a play.

11         (Testimony read by the court reporter.)

12         THE COURT:  We'll get you back to your

13    deliberations.  We'll look for lunch in about a half an

14    hour.

15         (The Court recessed at 11:34 p.m. and resumed

16    without the jury present at 1:37 p.m.)

17         THE COURT:  We have another question.  It's easier

18    to give you copies so you can look at it as well as hear it.

19         All right.  So I'll read it for the record.  The

20    question from the chair foreperson is, if force is deemed

21    quote excessive close quote does that force become quote

22    unlawful close quote according to, one, Connecticut

23    Constitution and/or, two, explanation in our jury charge for

24    assault and battery.

25         So they are asking whether the standards are the

same.  And I think they are not.  They are the same, we've
talked about this before, for the federal civil rights claim
and the Connecticut Constitutional claim, but assault and
battery is kind of first year law school problem of, you
know, even a minimal unconsented touching is technically an
assault and battery unless the justification is present.

So here's what I drafted and let's see what you
think.  Quote excessive force close quote would be
determined, I'll say, shall be determined by the same
standard for section 1983 and the Connecticut Constitutional
claims.

That standard does not apply to the assault and
battery claim.  Any physical touching for which there is no
consent would be sufficient to support a claim of assault
and battery unless you find the use of force was justified
for one of the reasons set out in the jury instructions.

MR. RIGAT:  Your Honor, the plaintiff has no
problem with that.

THE COURT:  I'm going to let Mr. Melley think it
through.

MR. MELLEY:  May I indulge the Court to read back
with regard to the assault, the second part of that?

THE COURT:  Yup.  That standard, meaning the
Constitutional standard, does not apply to the assault and
battery claim.  Any physical touching for which there is no

consent would be sufficient to support a claim of assault

and battery unless you find the use of force was justified

for one of the reasons set out in the jury instructions.

MR. MELLEY:  I take exception to the touching.

That's not in the definition that the Court gave in the

charge.

THE COURT:  All right.  What word shall we use?

MR. MELLEY:  Well, the definition the Court gave

was that any harmful or offensive physical contact.  That's

what the language is.

THE COURT:  All right.  That's better.

MR. MELLEY:  The touching is --

THE COURT:  Yeah, it takes us to an area where we

don't need to go to.

MR. MELLEY:  Right.  Which we haven't gone to yet.

THE COURT:  So any harmful, how did I put it?

MR. MELLEY:  I just had it.  I just had it.  Any

harmful or offensive physical contact.  And then --

THE COURT:  So then we can take out the consent

question, because that's not, it's not in this case.  And I

don't think we need it, right?

MR. MELLEY:  Right.

THE COURT:  Nobody would consent to harmful or

offensive contact.

MR. MELLEY:  Right.

1    THE COURT:  So I'll strike that language.  So any

2    harmful or offensive physical contact would be sufficient to

3    support a claim of assault and battery unless you find the

4    use of force was justified for one of the reasons set out in

5    the jury instructions.

6    MR. MELLEY:  That's fine.

7    THE COURT:  That work?  All right.  I'll write it

8    down and read it one last time so there's no

9    misunderstanding.

10    Here's what I'll send them, if we all agree.

11    Excessive force, in quotes, shall be determined by the same

12    standard for federal civil rights section 1983 and the

13    Connecticut Constitutional claims.  That standard does not

14    apply to the assault and battery claim.  Any harmful or

15    offensive physical contact is sufficient to support a claim

16    of assault and battery unless you find that the use of force

17    was justified for the reasons set out in the jury

18    instructions.

19    MR. RIGAT:  Yes.  That's great, Your Honor.

20    MR. MELLEY:  That's it.

21    THE COURT:  No, thanks.  That was a definite

22    upgrade there, Mr. Melley.  Thank you.  That came out a lot

23    better.  Appreciate it.  All right.  You can send these

24    back.

25    (The Court recessed at 1:45 p.m. and resumed at

1:50 p.m. without the jury)

   THE COURT:  I see you have a jury verdict form.  I see where it is.  It's on page four, the fifth page Roman eight, question 20, it's in the instructions.  They are writing it out, but I can see it.

   If your question to 20 is yes please go to question 21.  If your answer is no please go to question 23.  There isn't a question 23.  There is a section nine, damages.

   So assuming that's what they are asking I'll make that change.  You have their note?

   (Note handed to the Court)

   THE COURT:  Yeah.  All right.  Typos on verdict form, two questions.  Number 20, if your answer is no please go to question 23.  And there is no question 23.  So I will say it should be Roman nine, damages.

   And then she says, paragraph second line, oh, yeah.  Then you have found that the defendant's liable to the defendant, it should be to the plaintiff.

   MR. MELLEY:  I'm sorry, where are you?

   THE COURT:  Roman nine, damages.  There's a typo.  It shouldn't say the defendant's liable to the defendant.

   All right.  You both with me?  You see what I've done?

   MR. MELLEY:  It sounds like you created --

1    corrected errors.

2            THE COURT:  Two typos.  Yeah, exactly.  I just

3    wanted to make sure.  All right.  So line 20 I'll just say

4    the instruction for question 20 should be, well, if your

5    answer is no please go to Roman nine, damages.  And for the

6    part on Roman nine damages, you're correct, the phrase

7    should read, then you have found that the defendant is

8    liable to the plaintiff.  And I've underlined plaintiff so

9    they see where the correction is.  Good enough.  Thank you.

10            (The Court recessed at 1:55 p.m. and resumed at

11   3:00 p.m. without the jury present.

12            THE COURT:  All right.  I got a short note from

13   the foreperson saying that they have a verdict.  So we'll

14   bring them in and take it.  I'll read it aloud when it

15   comes.  You'll have the verdict form so you can follow

16   along.

17            (The jury returned at 3:01 p.m.)

18            THE COURT:  Is that the verdict of the jury?

19            FOREPERSON:  Yes.

20            THE COURT:  And I have been handed the verdict

21   form.  And is that the verdict of the jury?

22            FOREPERSON:  Yes.

23            THE COURT:  Everybody have a seat, please.  I'll

24   read the questions aloud one at a time.

25            First, federal civil rights claim against

defendant Gordon.  Question one, did defendant Troy Gordon

employ excessive force against plaintiff on December 17,

2004?  The answer is no.

Federal rights civil claim against defendant

Allen.  Did defendant Michael Allen employ excessive force

against plaintiff on December 17, 2004?  Question 4.  The

answer is yes.

Five, did defendant Michael Allen act

intentionally or recklessly in employing excessive force

against plaintiff on December 17, 2004?  The answer to that

is yes.

Question six, did the use of excessive force by

defendant Michael Allen cause plaintiff to suffer injuries?

And the answer is no.

For Roman three, the Connecticut Constitutional

claim, question 7, did defendant Troy Gordon violate the

plaintiff's civil rights under the Connecticut Constitution

by employing excessive force against the plaintiff on

December 17, 2004?  The answer is no.

Question Roman four, the Connecticut

Constitutional claim against the defendant Allen.  Did the

defendant Michael Allen violate the plaintiff's civil rights

under the Connecticut Constitution by employing excessive

force against the plaintiff on December 17, 2004?  The

answer is yes.

1          Question 11, did defendant Michael Allen act

2   intentionally or recklessly in employing excessive force

3   against plaintiff on December 17, 2004?  The answer is yes.

4          Twelve, did the use of excessive force by

5   defendant Michael Allen cause plaintiff to suffer injury?

6   And the answer is yes.

7          Five, assault and battery claim against defendant

8   Gordon.  Question 13, do you find that the defendant Troy

9   Gordon applied force or violence to the plaintiff's body in

10  an unlawful manner?  And the answer is no.

11         And assault and battery claim against defendant

12  Allen.  Do you find that the defendant Michael Allen applied

13  force or violence to the plaintiff's body in an unlawful

14  manner?  And the answer is no.

15         Intentional infliction of emotional distress

16  against defendant Gordon, question 17.  Did defendant Troy

17  Gordon act towards plaintiff in a manner intended to inflict

18  emotional distress which he should have known would cause

19  emotional distress?  And the answer is no.

20         Eight, intentional infliction of emotional

21  distress against defendant Allen.  Did the defendant Michael

22  Allen act towards plaintiff in a manner intended to inflict

23  emotional distress which he should have known would have

24  caused emotional distress?  Question 20.  And the answer is

25  no.

1          That completes the first eight sections of the

2   causes of action.  And with respect to damages there are

3   entries on all three, for all three categories.  Past

4   medical bills and expenses the amount awarded is $51,803.

5   Future medical bills and expenses, the amount awarded is

6   $60,000.  Pain and suffering, emotional distress and loss of

7   enjoyment of life the amount awarded is $408,197.

8          Miss LaCerle, is that the verdict of the jury in

9   this case?

10          FOREPERSON:  It is.

11          THE COURT:  Would the plaintiff like the jury

12   polled?

13          MR. RIGAT:  No, Your Honor.

14          THE COURT:  The defense like the jury polled?

15          MR. MELLEY:  No, Your Honor.

16          THE COURT:  Okay.  Anything further from either of

17   you with respect to this jury before I excuse them?

18          MR. MELLEY:  May we just have a quick sidebar,

19   Your Honor?

20          THE COURT:  Of course.

21          (Bench Conference held:)

22          MR. MELLEY:  We had discussed in terms of the

23   economics that the only future was 30.

24          THE COURT:  Right.

25          MR. MELLEY:  And they have 60.  So the question

1    is, does Your Honor instruct them now or is that something

2    we take care of?  I thought we --

3         THE COURT:  I think we have an agreement that

4    we'll reduce it to $30,000.

5         MR. RIGAT:  Yes.

6         THE COURT:  So we don't need to ask the jury about

7    that.

8         MR. RIGAT:  No.

9         THE COURT:  That's how I saw it too.

10        (The Bench Conference concluded)

11        THE COURT:  That completes your service.  I'll

12   come in in two minutes and thank you personally.  You don't

13   need to wait if you have to run, but I do want to thank you

14   for all of the work that you've put into this case.  I know

15   both sides, both attorneys join me in that as well.  And

16   I'll come in and say hello in a minute.  Stand for the jury.

17        (The jury excused at 3:05 p.m.)

18        THE COURT:  I think the next order of business is

19   for me to get a ruling out, which I'll do in writing, on the

20   qualified immunity issue.  Did you guys want to brief that

21   further or do you just want me to write something next week?

22        MR. RIGAT:  I, the plaintiff has no reason to

23   brief that, Your Honor.

24        MR. MELLEY:  I do want to touch on it, Your Honor,

25   because I think it ties in with my motion for judgment

1    regarding the standard of the reasonable officer,

2    particularly as it relates to the plaintiff's case in chief

3    where there was none.  So I would ask for, is two weeks too

4    much?

5              THE COURT:  No.  I always put my cards on the

6    table.  I'll start to write right away, but I'll hold off

7    finalizing because otherwise I start to forget.  But I'll

8    hold off finalizing anything until I review what you've

9    written.  And it may well change or dictate the outcome.  I

10   don't know.  So we'll start writing together, but I will

11   issue a ruling.  And two weeks is fine.

12             MR. MELLEY:  Thank you.

13             THE COURT:  And you need time to respond?  It

14   begins to sort of drag out, but you are welcome to it.  I

15   don't mean to be uncharitable.

16             MR. RIGAT:  No, I appreciate it.  As soon as we

17   get something, if we need to respond to it we can let you

18   know.

19             THE COURT:  All right.  Within, say, two days

20   you'll let us know if you need to respond to it --

21             MR. RIGAT:  Yes, Your Honor.

22             THE COURT:  -- after you've seen Mr. Melley's

23   brief.  I think we're set.  I wish you guys, all three of

24   you good fortune, okay.  And thanks again to the lawyers.  I

25   got to run and catch the people so I don't hold them up.

1              Anything else we need to take up?  I think that's

2    probably it.

3              MR. RIGAT:  No, Your Honor.

4              THE COURT:  I won't issue a judgment order

5    obviously until after I receive what you've written and I've

6    issued a ruling on the immunity question.

7              MR. MELLEY:  Your Honor instructed us, and I'm not

8    sure we actually did it, but we addressed it in chambers,

9    regarding this collateral source issue.  So I think that's

10   something that we said we would resolve for Your Honor

11   regarding that 51,000.

12             THE COURT:  Yeah.  Yeah.  The reduction.  How

13   about the two of you write me a joint letter?

14             MR. MELLEY:  And I think we can do that within a

15   week.

16             THE COURT:  Yeah.  I think the numbers were

17   agreed.  And if you'll just write me a joint letter, I'll

18   docket it.  It will be in the record and it will be done.

19   All right.

20             MR. RIGAT:  Thank you, Judge.

21             THE COURT:  Good.

22             MR. MELLEY:  Thank you, Your Honor.

23             (The Court recessed at 3:10 p.m.)

24

25

1          C E R T I F I C A T E

2

3          I, Anne Marie Henry, Official Court Reporter for

4     the United States District Court, for the District of

5     Vermont, do hereby certify that the foregoing pages are a

6     true and accurate transcription of my shorthand notes taken

7     in the aforementioned matter to the best of my skill and

8     ability.

9

10     _____

11                        Anne Marie Henry, RPR
                          Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25