UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

TYLON C. OUTLAW                    )

            VS                     )   CASE NO: 3:07-CV-01769

TROY GORDON & MICHAEL ALLEN    )

_____)        JURY CHARGE AT
                                         TRIAL BY JURY


BEFORE:   HONORABLE GEOFFREY W. CRAWFORD
          DISTRICT JUDGE



APPEARANCES:  ANTHONY P. DiCROSTA, ESQUIRE
                      Mirto, Ketaineck & DiCrosta
                      P.O. Box 428
                      West Haven, Connecticut
                      Representing The Plaintiff


                  RAYMOND J. RIGAT, ESQUIRE
                      Gilbride & Rigat
                      23 E. Main Street
                      Clinton, Connecticut   06413
                      Representing The Plaintiff

                      (Appearances Continued:)


DATE:       January 7, 2016


          TRANSCRIBED BY:  Anne Marie Henry, RPR
                      Official Court Reporter
                      P.O. Box 1932
                      Brattleboro, Vermont   05302

1              APPEARANCES CONTINUED:

2


3          NATHALIE FEOLA-GUERRIERI, ESQUIRE
                City of Hartford
4               Office of Corporation Counsel
                550 Main Street
5               Hartford, Connecticut   06013

6


7          WILLIAM J. MELLEY, III, ESQUIRE
                Law Offices of William J. Melley, III
8               250 Hudson Street
                Hartford, Connecticut   06016
9               Representing the Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1          THE COURT:  The final stage of this trial is for

 2     me to read the jury charge to you.  I'll also give you

 3     copies.  So it's about 20 pages long.  And I'll send eight

 4     copies back so you can read it at your leisure.  It's

 5     quarter of noon.  So it will take me 20, 25 minutes to read.

 6     Everybody okay or do you need a break?  You good to go?  All

 7     right.

 8          Members of the jury, now that you've heard the

 9     evidence and the arguments it's my duty to instruct you on

10     the law.  It's your duty to accept these instructions of law

11     and to apply them to the facts as you determine them.

12          My instructions come in two parts.  The first part

13     consists of general instructions about the task of the jury

14     and about the rules and principles which should guide you in

15     your deliberations.  The second part consists of

16     instructions which apply to the specific claims and defenses

17     in this case.  I ask that you pay equal attention to both

18     parts.

19          Role of the Court.  My duty at this point is to

20     instruct you as to the law.  It is your duty to accept these

21     instructions of law and to apply them to the facts as you

22     determine them, just as it has been my duty to preside over

23     the trial and to decide what testimony, the relevance --

24     what testimony and evidence is relevant under the law for

25     your consideration.

1    On these legal matters, you must take the law as I

2 give it to.  If any attorney has stated a legal principle

3 different from any that I state to you in my instructions,

4 you must follow my instructions.

5    You should not single out any instruction as alone

6 stating the law, but you should consider my instructions as

7 a whole when you retire to deliberate in the jury room.

8    You should not be concerned about the wisdom of

9 any rule that I state.  Regardless of any opinion that you

10 may have as to what the law should be, it would violate your

11 sworn duty to base a verdict upon any other view of the law

12 than that which I give to you.

13    Role of the jury.  As members of the jury, you are

14 the sole and exclusive judges of the facts.  You make

15 decisions based upon the evidence.  You determine the

16 credibility of the witnesses.  You resolve such conflicts as

17 there may be in the testimony.  You draw whatever reasonable

18 inferences you decide to draw from the facts as you have

19 determined them, and you determine the weight of the

20 evidence.  You are to perform the duty of finding the facts

21 without bias towards any party.

22    In deciding the facts, no one may invade your

23 function as jurors.  In order for you to determine the

24 facts, you must rely upon your own recollection of the

25 evidence.  What the lawyers have said in their opening

statements, in their closing arguments, in the objections, or in their questions is not evidence. Nor should you consider as evidence anything I may have said, or what I may say in these instructions, about a fact in issue.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I've made during the trial are not any indication of my views of what your decision should be as to whether or not the plaintiff has proven his case.

You should reach your judgment impartially and fairly, without prejudice or sympathy, solely upon the evidence in the case and without regard to the consequences of your decision. If you let sympathy or prejudice interfere with your clear thinking, there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at a just verdict.

Jurors' experience or specialized knowledge. Anything you have seen or heard outside the courtroom is not evidence and must be disregarded entirely. It would be a violation of your oath as jurors to consider anything outside the courtroom in your deliberations. But in your consideration of the evidence, you do not leave behind your

common sense and life experiences.  In other words, you are
not limited solely to what you see and hear as the witnesses
testify.  You are permitted to draw, from facts which you
find have been proved, such reasonable inferences as you
feel are justified in light of the evidence.

However, if any juror has specialized knowledge,
expertise, or information with regard to the facts and
circumstances of this case, he or she may not rely upon it
in deliberations or communicate it to other jurors.

All persons equal before the law.  Your verdict
must be based solely upon the evidence developed at this
trial, or lack of evidence.  The fact that the plaintiff is
an individual and that the defendants are police officers
must not enter into or affect your verdict.  This case
should be considered and decided by you as a dispute between
persons of equal standing in the community, of equal worth,
and holding the same or similar stations in life.  All
persons stand equal before the law and are to be treated as
equals in a court of justice.

Evidence.  The evidence in this case consists of
the sworn testimony of the witnesses, the exhibits admitted
into evidence, any stipulations submitted by the parties,
and judicially noted facts.  Testimony that has been
stricken or excluded is not evidence and you may not
consider it in rendering your verdict.  Also, if certain

1    testimony was received for a limited purpose, such as for

2    the purpose of assessing a witness's credibility, you must

3    follow the limiting instructions I've given.

4         There are two types of evidence that you may

5    properly use in reaching your verdict.  One type of evidence

6    is direct evidence.  Direct evidence is when a witness

7    testifies about something she or he knows by virtue of her

8    or his own senses, something he or she has seen, felt,

9    touched or heard.  Direct evidence may also be in the form

10   of an exhibit such as a document or a photograph.

11        Circumstantial evidence is evidence which tends to

12   prove a disputed fact by proof of other facts.  You may

13   infer on the basis of reason, experience and common sense

14   from one established fact, the existence or non-existence of

15   some other fact.  For example, if you were to see cow tracks

16   in a pasture, that would be circumstantial evidence that

17   there are or were cows in the pasture.

18        Circumstantial evidence is of no less value than

19   direct evidence.  Generally, the law makes no distinction

20   between direct evidence and circumstantial evidence but

21   simply requires that your verdict be based on a

22   preponderance of all the evidence presented.

23        Objections.  From time to time the Court has been

24   called upon to determine the admissibility of certain

25   evidence following objections from the attorneys.  It's part

of the attorney's duty to make objections, and you should
not draw any conclusions or make any judgment from the fact
that an attorney has objected to evidence.  In the same
fashion, you should not concern yourself with the reason for
any rulings on objections by the Court.

Whether offered evidence is admissible is purely a
question of law for the Court and outside the province or
concerns of the jury.  In admitting evidence to which
objections have been made, the Court does not determine what
weight should be given to such evidence, nor does it assess
the credibility of the evidence.  Of course, you will
dismiss from your mind completely and entirely any offered
evidence which has been ruled out of the case by the Court,
and you will refrain from speculation about the nature of
any exchange between the Court and counsel held out of your
hearing.

Expert witnesses.  In this case, I've permitted
witnesses to express opinions about matters that are at
issue.  These witnesses were the two physicians, Dr. Lena
and Dr. Spinella.  A witness may be permitted to testify to
an opinion on those matters about which he or she has
special knowledge, skill, experience and training.  Such
testimony is presented to you on the theory that someone who
is experienced and knowledgeable in the field can assist you
in understanding the evidence or in reaching an independent

1    decision on the facts.

2            In weighing this opinion testimony, you may

3    consider the witness's qualifications, his or her opinions,

4    the reasons for testifying, as well as all of the other

5    considerations that ordinarily apply when you are deciding

6    whether or not to believe a witness's testimony.

7            You may give the opinion testimony whatever

8    weight, if any you find it deserves in light of all the

9    evidence in this case.  You should not, however, accept

10   opinion testimony merely because I allowed the witness to

11   testify concerning his or her opinion.  Nor should you

12   substitute it for your own reason, judgment and common

13   sense.  The determination of the facts in this case rests

14   solely with you.

15           Credibility of witnesses.  You have had the

16   opportunity to observe all the witnesses.  It is now your

17   job to decide how believable each witness was in his or her

18   testimony.  You are the sole judges of the credibility of

19   each witness and of the importance of his or her testimony.

20           You are being called upon to resolve various

21   factual issues raised by the parties in the face of very

22   different pictures painted by both sides.  In making these

23   judgments, you should carefully scrutinize all of the

24   testimony of each witness, the circumstances under which

25   each witness testified, and any other matter in evidence

1   which may help you decide the truth and importance of each

2   witness's testimony.

3          How do you determine the credibility of the

4   witnesses?  You watched each witness testify.  Everything

5   each witness said or did on the witness stand counts in your

6   determination.  How did the witness impress you?  Did he or

7   she appear to be frank, forthright and candid, or evasive

8   and edgy as if hiding something?  How did the witness

9   appear, what was his or her demeanor, that is, his or her

10  carriage, behavior, bearing, manner and appearance while

11  testifying?  Often it is not what a person says but how he

12  says it that moves us.

13         You should use all the tests for truthfulness that

14  you would use in determining matters of importance to you in

15  your everyday life.  You should consider any bias or

16  hostility the witness may have shown for or against any

17  party as well as any interest the witness has in the outcome

18  of the case.

19         You should consider the opportunity the witness

20  has to see, hear and know the things about which he or she

21  testified, the accuracy of his or her memory, his or her

22  candor or lack of candor, his or her intelligence, the

23  reasonableness and probability of his or her testimony and

24  its consistency or lack of consistency, and its

25  corroboration or lack of corroboration with other credible

testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment and your own life experience.

Impeachment of a witness. A witness may be discredited or impeached by contradictory evidence, by a showing that the witness testified falsely concerning a matter, or by evidence that at sometime, at some other time the witness said or did something inconsistent with the witness's present testimony. It's your exclusive province to give the testimony of each witness such credibility or weight that you think it deserves.

If you find that a witness testified untruthfully in some respect, you may consider that fact in deciding what credence you will attach to that witness's testimony. Considering that fact and all other relevant evidence, you may accept or reject the testimony of such a witness, in whole or in part.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake, whether the inconsistency concerns an important fact, or whether it had

to do with a small detail and whether the witness had an explanation for the inconsistency and whether that explanation made sense to you.

Inferences.  In their arguments the parties may have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.  An inference is not a suspicion, guess, speculation or conjecture.  It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact that has been shown to exist.

There are times when different inferences may be drawn from facts, whether those facts are proven by direct or circumstantial evidence.  The plaintiff asks you to draw one set of inferences, while the defendants ask you to draw another.

It is a deduction or conclusion which you, the jury, are permitted to draw, but are not required to draw, from the facts which have been established by either direct or circumstantial evidence.  It is for you, and you alone, to decide what inferences you will draw.  In drawing inferences, you should exercise your common sense.

Some claims may require a jury to determine whether the plaintiff has proven a particular state of mind or purpose on the part of a person.  Direct proof of a person's state of mind or purpose is not always available

1   and is not required.  Instead, you are permitted, but not

2   required, to infer that a person acted with a particular

3   state of mind or purpose based on circumstantial evidence.

4            Burden of proof.  This is a civil case and as such

5   the plaintiff has the burden of proving the allegations of

6   his complaint by a preponderance of the evidence.  If after

7   considering all of the testimony you are satisfied that the

8   plaintiff has carried his burden on each essential point as

9   to which he has the burden of proof, then you must find for

10  the plaintiff on his claims.  If after such consideration,

11  you find the evidence to be in balance or equally probable,

12  or if you find that the evidence tips in front of the

13  defendants, then the plaintiff has failed to sustain his

14  burden and you must find for the defendants.

15           Multiple defendants.  In this case there is more

16  than one defendant.  You should consider the liability of

17  each defendant separately.  Each defendant is entitled to a

18  fair consideration of his defense and should not be

19  prejudiced by your decision concerning the other defendant.

20           Preponderance of the evidence.  The party with the

21  burden of proof on any given issue has the burden of proving

22  every disputed element of his claim to you by a

23  preponderance of the evidence.  What does a preponderance of

24  the evidence mean?  To establish a fact by a preponderance

25  of the evidence means to prove that the fact is more likely

true than not.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and the persuasiveness of the evidence, not to the number of witnesses or documents.

In determining whether a claim has been proved by a preponderance of the evidence you may consider the relevant testimony of all the witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly decided between the parties, then you must decide that issue against the party having the burden of proof.  That rule follows from the fact that the party bearing this burden must prove more than simple equality of evidence, he must prove the element at issue by a preponderance of the evidence.

On the other hand, the party with this burden of proof need prove no more than preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof, that what the party claims is more likely true than not true, then that element will have been proven by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is a proper standard of proof in a criminal trial.  That requirement does not apply to a civil

1    case such as this and you should put it out of your mind.

2            Now I turn to the second portion of the charge

3    which are instructions on the substantive law of the case.

4            I turn now to the instructions which govern the

5    specific allegations in this case.  The plaintiff has made

6    several claims.  Each has different elements and requires

7    the jury to make different factual decisions.  I will

8    discuss each claim separately.

9            Federal civil rights claims under 42 U.S. Section

10   1983.  First, I'll discuss the plaintiff's claim that the

11   defendants violated his rights under the United States

12   Constitution.  The law to be applied in this case is the

13   federal civil rights law which provides a remedy for

14   individuals who have been deprived of their constitutional

15   or statutory rights under color of state law.  We call this

16   type of a claim, a section 1983 claim, because of the title

17   of the particular federal law authorizing a lawsuit for

18   depravation of federal rights.

19           The plaintiff has the burden of proving each and

20   every element of his section 1983 claim by a preponderance

21   of the evidence.  If you find that any one of the elements

22   of the plaintiff's section 1983 claim has not been proven by

23   a preponderance of the evidence, you must return a verdict

24   for the defendants with respect to such claim or claims.

25           Elements of a section 1983 claim.  To establish a

claim under section 1983, the plaintiff must establish, by a preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under color of state law.

Second, that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States.

And, third, that the defendants' acts were the proximate cause of the injuries and damages sustained by the plaintiff.

I will now examine each of the three elements in greater detail.

Action under color of state law. The first element of the plaintiff's claim is that the defendants acted under color of state law. Since the defendants were police officers employed by the City of Hartford and on duty at the time of the acts in question, they were acting under color of state law. In other words, the first statutory requirement is satisfied.

Deprivation of right. The second element of the plaintiff's claim is that the defendants deprived him of a federal right. In order for the plaintiff to establish the second element, he must show three things by a preponderance of the evidence:

First, that the defendants committed the acts alleged by the plaintiff. Second, that those acts caused the plaintiff to suffer the loss of a federal right. And, third, that in performing the acts alleged the defendants acted with the requisite state of mind.

I will elaborate on those issues and then return to the final element of a section 1983 claim, proximate cause.

Excessive force. The plaintiff claims the defendants Gordon and Allen deprived him of his right to be free from excessive force during a stop or arrest in striking and hitting him on December 17, 2004 when they encountered him in Harford, Connecticut. I will now instruct you concerning the law regarding liability for use of excessive and unnecessary force by a police officer.

In general, a seizure or arrest of a person is unreasonable under the Fourth Amendment of the Constitution if a police officer uses excessive force in making a lawful arrest or in defending himself and others. Thus, in order to prove an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that one or both of the defendant police officers used excessive force when they arrested him on December 17, 2004.

Under the Fourth Amendment, a police officer may only use such force as is, objectively reasonable, under all

the circumstances.   In other words, you must judge the

reasonableness of a particular use of force from the

perspective of a reasonable officer on the scene and not

with the 20-20 vision of hindsight.

          The right to make any arrest or to protect the

public or another police officer necessarily carries with it

the right to use some degree of physical coercion or threat

thereof to effect the arrest or to protect.   A police

officer is justified in using reasonable physical force upon

another person when and to the extent that a reasonable

officer on the scene would believe it is reasonably

necessary to achieve these purposes.   A police officer is

not justified in using physical force which exceeds the

amount reasonably required under the conditions of the case.

          The Fourth Amendment does not require that an

officer who uses force choose what in hindsight, was the

wisest or best or the least intrusive alternative available.

Officers must act within a range of objective

reasonableness.   You should consider the circumstances

through the eyes of a reasonable and cautious police officer

on the scene, guided by his or her training and experience.

          In determining whether the officers used excessive

force in this case, you may consider all of the

circumstances known to the officers on the scene, including:

          One, the severity of the crime or other

1 circumstances to which the officers were responding.

2    Two, whether the plaintiff posed an immediate

3 threat to the safety of the officers or to others.

4    Three, whether the plaintiff was actively

5 resisting arrest or attempting to evade arrest by flight.

6    Four, the amount of time and any changing

7 circumstances during which the officer had to determine the

8 type and amount of force that appeared to be reasonably

9 necessary.

10    Five, availability of alternative methods to take

11 the plaintiff into custody.

12    Six, other factors particular to this case.

13    State of mind.  I instruct you that, to establish

14 a claim under section 1983, the plaintiff must show that the

15 defendants acted intentionally or recklessly.  If you find

16 that the acts of the defendants were merely negligent, and

17 even if you find that the plaintiff was injured as a result

18 of those acts, you must return a verdict for the defendants.

19    An act is intentional if it's done knowingly, that

20 is if it's done voluntarily and deliberately and not because

21 of mistake, accident, negligence or other innocent reason.

22    An act is reckless if done in conscious disregard

23 of its known probable consequences.  In determining whether

24 the defendants acted with the requisite knowledge, you

25 should remember that while witnesses may see and hear and

still be able to give direct evidence of what a person does or fails to do, there is no way of looking into a person's mind.  Therefore, you have to depend on what was done and what the people involved said was in their minds and your belief or disbelief with respect to those facts.

Proximate cause.  The third element which the plaintiff must prove is that the defendants' acts were a proximate cause of the injuries sustained by the plaintiff. Proximate cause means that there must be a sufficient causal connection between the act or omission of a defendant and any injury or damages sustained by the plaintiff.  An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury, that is, if the injury or damages were a reasonably foreseeable consequence of the defendants' acts or omissions.

In order to recover damages, the plaintiff must show by a preponderance of the evidence that such injury would not have occurred without the conduct of the defendants.  If you find that the defendants have proved by a preponderance of the evidence, that the plaintiff complains about an injury which would have occurred even in the absence of the defendants' conduct, you must find that the defendants did not proximately cause the plaintiff's injury.

A proximate cause need not always be the nearest

cause either in time or in space.  In addition, there may be more than one proximate cause of an injury or damage.  Many factors or the conduct of two or more people may operate in the same time, either independently or together, to cause an injury.

A defendant is not liable if the plaintiff's injury was caused by a new or independent source of an injury which intervenes between the defendants' acts or omissions and the plaintiff's injury and produces a result which was not reasonably foreseeable by the defendant.

Claims arising under the state law of Connecticut. I now direct your attention to the claims made by the plaintiff during the state -- under the state law of Connecticut.  These include claims arising under both the Constitution of the State of Connecticut and the general state law of Connecticut.

Violation of Sections 7 and 9 of the Connecticut Constitution.  In addition to the plaintiff's federal constitutional claim, the plaintiff claims that the defendants violated his state constitutional right not to be subjected to excessive or unreasonable force during an arrest, guaranteed by Article First, Sections 7 and 9 of the Connecticut Constitution.  Article First, Section 7 guarantees all citizens of this state that they quote, shall be secure in their persons, house, papers and possessions

1  from unreasonable search and seizures, close quote.  Section

2  9 guarantees that quote, no person shall be arrested,

3  detained or punished, except in cases clearly warranted by

4  law, close quote.  State law provides that a person may seek

5  damages for a police officer's violation of these rights.

6        The elements of these state law claims consist of

7  generally the same elements as the plaintiff's federal

8  section 1983 claim of excessive force.  Therefore, in order

9  for the plaintiff to prove the state constitutional claims,

10  he must establish, by a preponderance of the evidence, that

11  the defendants committed acts that violated his

12  constitutional rights secured by the Connecticut

13  Constitution, that in doing so the defendants were acting

14  under color of state law, and that the defendants' acts were

15  the proximate cause of the plaintiff's damages.

16        As in the case of the federal section 1983 claim,

17  I instruct you that the defendants' actions took place,

18  under color of state law.  This is not an element you must

19  decide.

20        In deciding whether the defendants' violated the

21  plaintiff's rights under the Connecticut Constitution, you

22  may follow the same instructions concerning the claim of,

23  excessive force, which I provided concerning the section

24  1983 claim.

25        You should also follow the same instructions

regarding the third element of proximate cause.  As in the

case of the section 1983 claim, the plaintiff must prove

that a violation of his state constitutional rights was the

proximate cause of injury.

Assault and battery claim.  In addition to

claiming his federal and state constitutional rights were

violated, the plaintiff also claims that his rights under

the federal, under the general Connecticut state law were

violated.  He claims that the defendants committed the

wrongful act of assault and battery upon him.  Assault and

battery consists of two elements, both of which the

plaintiff must prove by a preponderance of the evidence.

One, that either or both of the defendants applied

force or violence to the plaintiff's body.

And, two, that the application of the force or

violence was unlawful.

With respect to the first element, any harmful or

offensive physical contact may satisfy the requirements for

an assault and battery.

With respect to the second element, not every use

of force against another person is unlawful.  In the context

of this case, a reasonable use of force which is necessary

to compel compliance with lawful police orders may not

constitute assault and battery even if it might under

different circumstances.  In other words, you must decide

whether the use of force by the police officer defendants was reasonable under the circumstances of this case.

As with the constitutional claims, you must also decide whether the assault and battery, if it occurred, was the proximate cause of injury to the plaintiff.  The same instructions I provided earlier concerning the nature of proximate cause apply to this claim.

Justified use of force.  In considering both the state constitutional claim and the general state law claim of assault and battery, you should consider the state law of Connecticut concerning the use of force by a police officer. Under Connecticut law, a police officer is justified in using physical force upon another person when and to the extent he or she reasonably believes such to be necessary to effect an arrest or to defend himself or herself or a third party from the use or imminent use of physical force while effecting or attempting to effect an arrest.  Under Connecticut law, a citizen possesses no right to resist arrest, even if that citizen believes the arrest is unlawful.  Citizens are also required to obey the lawful commands of a police officer while he or she is performing official duties.

In determining whether a defendant reasonably believed that the use of physical force was necessary to arrest plaintiff or to prevent him from harming the officers

or others, you should take into account all of the
circumstances of the incident.  You should consider this
instruction in deciding whether the defendants violated the
Connecticut Constitution or committed an assault and battery
upon the plaintiff.

Intentional inflection of emotional distress.  The
plaintiff alleges that the conduct of the defendants
constituted intentional infliction of emotional distress.

To establish such a claim, the plaintiff must
establish, by a preponderance of the evidence, each of the
following elements:

First, that the defendants intended to inflict
emotional distress, or that the defendants knew or should
have known that emotional distress was the likely result of
their conduct.

Second, that the conduct was extreme and
outrageous.

Third, that the conduct was the cause of emotional
distress experienced by the plaintiff.

And, fourth, that the emotional distress sustained
by the plaintiff was severe.

The first element concerns the defendants' state
of mind.  Recall that there is no way of looking into a
person's mind.  Therefore, you have to depend on what was
done and what the people involved said was in their minds,

1   as well as your belief or disbelief with respect to those

2   facts.

3      Concerning the second element, the defendants'

4   liability for intentional infliction of emotional distress

5   requires that you find that their conduct exceeded all

6   bounds usually tolerated by decent society.  Liability can

7   be found only where the defendants' conduct has been so

8   outrageous in character, and so extreme in degree, as to go

9   beyond all possible bounds of decency, to be regarded as

10   atrocious, utterly intolerable in a civilized community.

11   Conduct on the part of the defendants that is merely

12   insulting or displays bad manners or results in hurt

13   feelings is insufficient to form the basis for liability

14   based upon intentional infliction of emotional distress.

15      The plaintiff must prove that defendants' acts

16   were a proximate cause of his injuries.  Proximate cause in

17   this context means the same thing as it did in the context

18   of plaintiff's section 1983 claims, that is to say that the

19   act was a substantial factor in bringing about or actually

20   causing injury such that the injury or damages were a

21   reasonably foreseeable consequence of the defendants' acts.

22      Compensatory damages.  Just because I am

23   instructing you on how to award damages does not mean that I

24   have any opinion on whether or not the defendants should be

25   held liable.

1          If you return a verdict for the plaintiff, then

2   you must consider the issue of actual damages.

3          If you return a verdict for the plaintiff then you

4   must award him such sum of money as you believe will fairly

5   and justly compensate him for any injury you believe he

6   actually sustained as a consequence of the conduct of the

7   defendants.

8          You shall award actual damages only for those

9   injuries which you find that the plaintiff has proven by a

10  preponderance of the evidence.  However, you shall award

11  actual damages only for those injuries which you find the

12  plaintiff has proven by a preponderance of the evidence to

13  have been proximately caused by conduct of the defendants

14  which violated section 1983 or Connecticut state law.  That

15  is, you may not simply award actual damages for any injury

16  suffered by the plaintiff.  You must award actual damages

17  only for those injuries that are a direct result of actions

18  by the defendants which violated the plaintiff's rights

19  under federal law or the law of Connecticut.

20         You should not award damages more than once for

21  the same injury.  For example, if the plaintiff were to

22  prevail on two claims and establish damages for the same

23  injury under both claims, you should not award him damages

24  on both of those claims.  The plaintiff is entitled to be

25  made whole, but is not entitled to recover more than he

1    lost.

2          Of course, if different injuries are attributed to

3    the separate claims, then you must compensate the plaintiff

4    fully for all of his injuries.

5          Actual damages must not be based on speculation or

6    sympathy.  They must be based on the evidence presented at

7    trial, and only on that evidence.

8          Final instructions.  This completes my

9    instructions to the jury.  You will now retire to the jury

10   room to deliberate in privacy about the issues in the case.

11   I'll provide a verdict form to guide you in your

12   deliberations.  You'll also receive the exhibits which were

13   admitted into evidence.  And I'll also provide eight copies,

14   excuse me, eight copies of these written instructions.

15         I appoint Marilyn LaCerle as your foreperson.  She

16   shall be responsible for making sure that the deliberations

17   occur in an orderly fashion and that every juror has the

18   opportunity to participate.

19         Any verdict which you return must be unanimous.

20   This means that you cannot answer a question on the verdict

21   form unless and until all eight of you agree on the answer.

22         I will be providing you with a formal verdict

23   which lists the questions which we need answers.

24         If you need to communicate with the Court, please

25   do so in writing.  In other words, you can send a note.

1    I'll confer with the lawyers about your question and send

2    back a written response.

3           Please advise the court officer after you reach a

4    verdict, but do not tell him or her, or anyone else, what

5    the verdict is, until you return to the courtroom at which

6    time I will receive the verdict form from your foreperson.

7           So if you'll humor us for one more minute, I need

8    to speak at the sidebar in our little huddle with the

9    attorneys for a second.  And we'll get the court officer to

10   help you get back to the jury room and make sure that nobody

11   interrupts or bothers you in your deliberations.  Okay.

12        (Bench  Conference held:)

13        THE COURT:  Any objection to the charge from the

14   plaintiff?

15        MR. RIGAT:  No, Your Honor.

16        THE COURT:  Any objection from the defense?

17        MR. MELLEY:  Just as to the emotional distress

18   which we covered in the charging conference.

19        THE COURT:  Okay.  So your objection will be that

20   that claim should not have gone to the jury?

21        MR. MELLEY:  Correct.

22        THE COURT:  That's preserved.  All right.  Thank

23   you.

24        MR. MELLEY:  Thank you.

25        (The Bench Conference concluded)

1          THE COURT:  One second.  We have a court officer

2     and we need to swear him or her in to keep you together and

3     let nobody interrupt your deliberations.

4          MR. RIGAT:  Your Honor, if I may?  Mr. Melley and

5     I have conferred, if there's no objection we did prepare a

6     summary of the medical billings.  It may be easier.  May I

7     approach?

8          THE COURT:  Yeah, why don't we take it up with the

9     clerk as soon as she comes back.

10          MR. RIGAT:  Thank you.

11          THE COURT:  We'll send the exhibits back in.  They

12     are all in order.  And lunch is coming at 1.

13          Good afternoon.  Thank you both.  These are the

14     two court officers that will take turns.  And they'll be

15     outside the door.  They would be the people that you would

16     communicate with, give them a note if there's some or let

17     them know that you've reached a verdict.

18          (Court Officers sworn in)

19          THE COURT:  All right.  Thank you both.  We'll

20     start your deliberations.

21          (The Jury excused at 12:23 p.m.)

22          THE COURT:  All right.  We've got the exhibits

23     together?  I'll get the charge in to them in just a couple

24     of minutes.

25          Let's mark this as a joint exhibit.  Does that

sound fair?

MR. RIGAT:  Yes.

THE COURT:  A Court exhibit.  Yes, that's fine.

(The Court recessed at 12:24 p.m. and returned
without the jury present at 3:52 p.m.)

THE COURT:  All right.  We have a question.  I
think it's not a particularly hard one, but I'll tell you
what it is and what my proposed answer is.  The question is,
you guys have your verdict form handy?  You'll need it.

In question number three on verdict form does the
word quote cause close quote refer to proximate cause in the
jury charge?  And I think the answer is yes.  Is that okay
with everybody?

MR. RIGAT:  Yes, Your Honor.

THE COURT:  I'll send the note back with that
answer then.  Okay.  Give that back.  Would you let them
know they can keep the note, but I'm going to need it for
the record at the end of the case?  So tell them not to
throw it in the wastebasket or anything like that.

All right.  So far so good.  We'll let you know
when we hear anything further.

MR. RIGAT:  Thank you, Your Honor.

(The Court recessed at 3:53 p.m. and resumed at
4:19 p.m. without the jury present)

THE COURT:  All right.  We made copies of the note

because it's easier to understand if you read it.  But I'll read it for the record.  The note from the foreperson says, proximate cause four paragraphs, last paragraph quote, new or independent cause by a new or independent source of an injury, close quote.  And then she asks, outside of those involved in the event, i.e., a bystander intervenes and causes injury or an officer is chasing a suspect and the suspect runs into traffic.

I have a proposed response and then a more general thought.  I could write something like this, a new or independent cause could include either of your examples.  A new or independent cause is a cause which breaks the chain of causation and stands by itself as the actual cause of injury.

And it really kind of repeats the language of the jury charge.  But the more fundamental question that I have is it's a bit of a rabbit hole here.  I don't remember anybody arguing intervening cause or new and independent cause for these injuries.

Mr. Malley, you think this is really part of the case?  It's, you know, the language about intervening cause is kind of standard language.  It's attracted their attention, but I'm not sure it's actually an issue in the case.  I can't remember anybody pointing to one or arguing that one was present.

1          MR. MELLEY:  There was a fair amount of testimony

2     that there were a swarm of officers or individuals or

3     unknown persons.

4          THE COURT:  That's fair.

5          MR. MELLEY:  I mean, that was there.

6          THE COURT:  Yeah.

7          MR. MELLEY:  And, and part of the issue was

8     Officer Allen said he did what he did, period.  And beyond

9     that he didn't know.  And so there is evidence of others

10    being involved.

11         THE COURT:  Who could have been the cause of

12    injury?

13         MR. MELLEY:  Correct.

14         THE COURT:  All right.  That's fair.  That is what

15    I was looking for.  So how about the answer, does the

16    proposed answer --

17         MR. MELLEY:  Can you say it one more time?

18         THE COURT:  Yeah, sure.  A new or independent

19    cause could include either of your examples.  A new or

20    independent cause is a cause which breaks the chain of

21    causation and stands by itself as the actual cause of

22    injury.

23         MR. MELLEY:  That's fine.

24         MR. RIGAT:  That's fine.

25         MR. DiCROSTA:  That's fine, Your Honor.

1          THE COURT:  All right.  That's what I'll send

2    back.

3          I'll just see if I can write it more clearly for

4    them.

5          All right.  Just make sure to hang onto that one

6    after they've had a chance just so they don't throw it away.

7    Good enough.  Keep close.

8          (The Court recessed at 4:24 p.m. and resumed

9    without the jury present at 5:10 p.m.)

10          THE COURT:  Thanks.  We have another question.

11    It's process oriented rather than substantive.  Are we

12    allowed to have access to depositions?  You might have

13    thought they had heard quite a bit already, but the answer

14    that I propose is no, except for the deposition of Dr. Lena

15    which was read as trial testimony.

16          And then I've added, you can ask to hear courtroom

17    testimony read back if you wish.

18          So I hate to open that box, but I don't want to

19    tell them they can have one deposition without making sure

20    they understand that they have access to the rest of the

21    courtroom testimony.

22          MR. MELLEY:  My only comment, Your Honor, would be

23    that there was, a number of times that was specific

24    testimony put into the record from depositions.  In other

25    words, I do recall specific instances -- well, we just had

1    it this morning with Officer Allen from the deposition.

2    There was a read back of particular items as there was with

3    the plaintiff.

4            THE COURT:  Right.

5            MR. MELLEY:  I don't recall anything with

6    Detective Sergeant Gordon.  Perhaps if that's their question

7    it may be appropriate to ask them, do they have something

8    specific in mind so we don't get involved in -- but,

9    otherwise, your answer, can we have the depositions, no, I

10   understand that.

11           THE COURT:  Yeah.  Yeah.

12           MR. MELLEY:  So --

13           THE COURT:  What do you think?

14           MR. RIGAT:  I think, Your Honor, that the

15   depositions were used, aside from Dr. Lena's, for

16   impeachment purposes.

17           THE COURT:  Right.

18           MR. RIGAT:  So that doesn't come in before the

19   jury, but they can have testimony reread --

20           THE COURT:  Right.

21           MR. RIGAT -- from it.

22           THE COURT:  They have access to that deposition

23   testimony through the courtroom testimony --

24           MR. RIGAT:  Yes.

25           THE COURT:  -- at which it was read and the

witness was confronted with it. But I hate to sort of open
up, I know you don't want this either, some kind of search
into the underlying discovery depositions. I mean it just
goes --

MR. MELLEY: No. No. No. Clearly we don't want
that.

THE COURT: Right.

MR. MELLEY: But, for example, if they have a
question, we want to see the transcript relating to
whatever, specific that was incorporated into the record.
And then I think it wouldn't be onerous to find whatever
they are looking for.

THE COURT: I think what we would be limited to is
the record that we made --

MR. MELLEY: Correct.

THE COURT: -- of -- neither of you did it sort of
the classic way, which is were you asked at Page 7, you
know, Line 13, were you asked this question, blah, blah,
blay, did you give this answer, blah, blah, blah. You did
it in a slightly more looser way, which is fine. Do you
have anything that I could add to this answer that would --

MR. MELLEY: My only thought was if you have a
recollection of a specific part of a specific deposition
that was presented before you let us know with more
specificity, but you can't have the deposition.

1          THE COURT:  Yeah, we all agree to that?

2          MR. RIGAT:  Yes.

3          THE COURT:  How about if I add, if you need trial

4    testimony concerning a particular witness and deposition

5    read back please let us know.  That work?

6          MR. MELLEY:  That covers it.  Thanks, Judge.

7          THE COURT:  All right.  All right.  I'll send this

8    back.  The courtroom deputy is also going to kind of take

9    their pulse about whether they want to break at 6.  We've

10   left it with them that we'll go to 6, which they are fine

11   about.  If they want to go later I'll go along, but I don't

12   want to impose on people that have had a long day and are

13   getting tired.

14         So it will be their call if they want to go past

15   6, otherwise we'll let them go at 6.  And I'll bring them in

16   here and talk to them about not sharing their experience

17   with their family members until, you know, the case is over.

18   And bring them back at 9 unless, as a group, they want to

19   start earlier, which juries often want to.  But I don't know

20   about their, you know, children and other obligations.  So I

21   don't want to impose on them unless they are, unless they

22   volunteer.  Okay?  Thank you.

23         MR. RIGAT:  Yes, thank you.

24         (The Court recessed at 5:22 p.m. and resumed at

25   5:55 p.m. without the jury present)

THE COURT:  All right.  They have not a question,
but a request.  They have written, we would like Detective
Gordon and Officer Allen's testimony read back to us
tomorrow.  We plan to reconvene at 9.

I'll bring them in and tell them that we'll make
arrangements to do that at 9 o'clock tomorrow.  And we'll
all sit through the read back.  Neither was terribly long I
don't think.  So that will be the first order of business in
the morning.

I'll send them home tonight with a request that
they not talk about the case.

Anything else that we need to take up tonight?
All right.  We can bring them right in.

(The Jury returned at 5:57 p.m.)

THE COURT:  Have a seat everybody, please.  I've
got your note.  And totally fine.  We'll arrange for the
testimony you requested, Officer Allen and Detective Gordon
read back starting at 9 o'clock tomorrow.

And I know I speak for everybody in the room when
I thank you for the work you put in this afternoon.  And
we'll reconvene at 9.

I'll just ask, now it's even, I think at least as
important, really more important, when you go home tonight
just keep your thoughts to yourself and keep your, what
you've been working on in confidence.  And just resume

1   tomorrow.  Go home and put your feet up and have fun.  Okay.

2   All right.  So we'll see you bright and early 9 o'clock

3   tomorrow morning.  Thanks.

4              (The Court recessed at 6:02 p.m.)

1    C E R T I F I C A T E

2

3         I, Anne Marie Henry, Official Court Reporter for

4    the United States District Court, for the District of

5    Vermont, do hereby certify that the foregoing pages are a

6    true and accurate transcription of my shorthand notes taken

7    in the aforementioned matter to the best of my skill and

8    ability.

9

10   _____

11                    Anne Marie Henry, RPR
                      Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25