```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


_____

TYLON C. OUTLAW                    )

          VS                       )  CASE NO: 3:07-CV-01769

TROY GORDON & MICHAEL ALLEN        )

_____)      MORNING MOTION HEARING AT
                                            TRIAL BY JURY




BEFORE:    HONORABLE GEOFFREY W. CRAWFORD
           DISTRICT JUDGE




APPEARANCES:   ANTHONY P. DiCROSTA, ESQUIRE
                    Mirto, Ketaineck & DiCrosta
                    P.O. Box 428
                    West Haven, Connecticut
                    Representing The Plaintiff



               RAYMOND J. RIGAT, ESQUIRE
                    Gilbride & Rigat
                    23 E. Main Street
                    Clinton, Connecticut   06413
                    Representing The Plaintiff

                    (Appearances Continued:)



DATE:          January 7, 2016



          TRANSCRIBED BY:  Anne Marie Henry, RPR
                           Official Court Reporter
                           P.O. Box 1932
                           Brattleboro, Vermont    05302
```

```
 1                    APPEARANCES CONTINUED:

 2


 3        NATHALIE FEOLA-GUERRIERI, ESQUIRE
              City of Hartford
 4            Office of Corporation Counsel
              550 Main Street
 5            Hartford, Connecticut   06013

 6


 7        WILLIAM J. MELLEY, III, ESQUIRE
              Law Offices of William J. Melley, III
 8            250 Hudson Street
              Hartford, Connecticut   06016
 9            Representing the Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

    (The Court opened at 9:00 a.m. without the jury present)

    THE CLERK: This is the matter of Tylon Outlaw versus Troy Gordon and Michael Allen, case number 3:07-CV-1769.

    THE COURT: One loose end is the issue regarding Dr. Zimmerman's treatment and also Dr. Ranade-Kapur's report. I take it there's no bill from Dr. Ranade-Kapur; right?

    MR. RIGAT: Your Honor, we're going to make this simple. We're not going to include the report from Dr. Ranade-Kapur.

    THE COURT: Got it.

    MR. RIGAT: And also, we're just going to take out the medical billings for Dr. Zimmerman.

    THE COURT: Okay.

    MR. RIGAT: They were like $840. And it's just easier to take that out of the calculation. So we're going to correct the summary sheets so the jury has that. Mr. DiCrosta, young Mr. DiCrosta, is going to work with the Clerk's Office downstairs at one of the breaks to get a clean sheet.

    THE COURT: And you also aren't going to offer Dr. Zimmerman's handwritten chart note?

    MR. RIGAT: We don't need that either. I don't

1  think that's in.
2          THE COURT:  Perfect.  So that resolves that
3  exhibit question.
4          MR. RIGAT:  It does.
5          THE COURT:  So I can give you these back as not
6  in.
7          MR. RIGAT:  Yes, sir.  May I approach?
8          THE COURT:  Yeah, please.  They were part of the
9  sort of omnibus medical exhibit, but they were like
10 sub-chapters of it.  So that they won't come in.
11         And was there an issue Mr. Rigat about future
12 medical expense that we needed to talk about or are we
13 there?
14         MR. RIGAT:  No, I think we're there.
15         MR. MELLEY:  Your Honor, you already ruled on
16 that.  The doctor testified to the potential for 30,000.
17         THE COURT:  Right.  And that's going to be in?
18         MR. RIGAT:  Yes, that's going to be in.
19         THE COURT:  Oh, yeah. Yeah. Yeah.  No.  No.
20         MR. RIGAT:  I think beyond that we found it
21 unfair.  And the only thing I think Your Honor that we have
22 remaining is the actuarial life table.
23         MR. MELLEY:  No, I thought we did that.
24         MR. RIGAT:  But we have to somehow -- do we need
25 the Court to enter that as a formal stipulation of fact or

```
 1  is it --
 2          THE COURT:  Are you both in agreement as to his,
 3  Mr. Outlaw's future life expectancy?
 4          MR. MELLEY:  I thought we did that.
 5          THE COURT:  I thought we did, but I just --
 6          MR. RIGAT:  Yeah, we agreed, but I don't know how
 7  we present that to the jury.  I mean, certainly we could
 8  argue it, but I want them to understand that that's
 9  something that they have to take as fact.
10          MR. MELLEY:  We stipulated that a man of his
11  current age has a life expectancy of 37.5 years.
12          If the Court wants to make reference to that
13  that's fine.  If plaintiff's counsel wants to make reference
14  to it when we begin now, before the cross examination before
15  the jury, I don't have a problem with that, but there's a
16  stipulation.
17          THE COURT:  All right.  Or you can just put it in
18  your closing argument.
19          MR. RIGAT:  That we've stipulated.  Whatever is
20  the Court's pleasure.
21          THE COURT:  That it's stipulated.  Why don't you
22  just do that.  That work for you?
23          MR. MELLEY:  Oh, of course.
24          THE COURT:  The parties have agreed that the
25  future life expectancy is 37 and a half years.
```

1    MR. RIGAT:  We're there.

2    MR. MELLEY:  Thank you, Judge.

3    THE COURT:  I had one more, two issues regarding the charge.  For the state of mind for the federal charge that's pretty straight ahead.  It's intentional or reckless.  I don't think there's much dispute about that.

The constitutional state of mind, which in draft two appears at, I'm sorry, around Page 15 or 16, I had intentional or negligent.  And I wanted to make sure that that was how you saw it.  It's a little different from the 1983 standard.

MR. MELLEY:  Does Your Honor have the page for us that you're referring to?

THE COURT:  What's that?

MR. MELLEY:  Do you have the page to help us?

THE COURT:  That's what I'm hunting for.

MR. MELLEY:  Oh, okay.

THE COURT:  Yeah.  Maybe it's just in the jury verdict form.  You have a copy of the draft verdict form in front of you?

MR. RIGAT:  Buried on the table.  I don't think we printed it yet.  I don't think we do have it.

THE COURT:  In, in the draft charge I tracked, I followed Section 1983 for purposes of the state constitutional standard as well.

1    MR. RIGAT:  Which seems to be the common practice
2  in Connecticut.
3          THE COURT:  All right.  So if there is reference
4  to negligence in the jury verdict form, which I wish I had
5  in front of me, but I don't, I'll take it out.
6          MR. RIGAT:  That's fair because it's not a
7  negligence issue.  I don't believe so, no.
8          THE COURT:  It's not a negligence issue.  I picked
9  it up at some point, but you're both in agreement that it
10  should be the same as for 1983?
11          MR. MELLEY:  Yes.
12          MR. RIGAT:  Yes.
13          THE COURT:  Good.  Oh, and the other question is,
14  I want to make sure that you have a chance to register any
15  objections to the charge.  Do so now because we're still
16  sort of pulling it together.
17          Normally what I do is go to the sidebar after I've
18  read it and give you a chance to put on the record any
19  objections that you have for purposes of appeal basically or
20  so I can fix it if there's, you know, a glitch or something
21  that's correctable.  Does that work for you Mr. Melley?
22          MR. MELLEY:  Sure.  You want to do that now?
23          THE COURT:  No, I can't do it now because it's not
24  in final form and you haven't heard it yet.
25          MR. MELLEY:  Oh, I see.

1          THE COURT: Typically what I've done is I read it
2  to the jury. And before we excuse them we can meet over at
3  sidebar --
4          MR. MELLEY: I understand.
5          THE COURT: -- and then you can just register --
6  and you will have a copy to follow along, you know, and so
7  you can -- either you have objections that are already in
8  your mind or you think of them when you hear it and you can
9  make them.
10         MR. MELLEY: So is the time still open for a
11 suggestion on the charge?
12         THE COURT: Totally.
13         MR. MELLEY: If I may approach?
14         THE COURT: Sure.
15         MR. MELLEY: I have here the -- we had a
16 discussion in chambers about credibility per se.
17         THE COURT: Right.
18         MR. MELLEY: And what I've just given counsel and
19 the Court the standard Connecticut jury instruction on
20 credibility, which gets to what I was talking about, just in
21 terms of a simple explanation to the jury how they go about
22 to determine credibility.
23         THE COURT: Right.
24         MR. MELLEY: And the proposed charge from the
25 Court I think went off a little bit from what the jury has

1  to do to find facts.  They have to determine credibility.
2  And they have to weigh it.  I just get, as I said yesterday,
3  I get nervous with this idea of telling them they have to
4  determine the truth which implies finding people lie, which
5  implies something more than what happens in a trial.
6         This isn't about lying or not.  It's about
7  credibility.  And it all leads to the end result of whether
8  or not the case was proven.
9         And the other I think is more stark.  Obviously
10 the goal is to find the truth, but in reality the situation
11 is that the jury deals with the facts that are presented.
12 Period.  And that may include everything.  It may not.  And
13 it's just a sidetrack personal opinion.
14         THE COURT:  I've got an idea and then I'll hear
15 from Mr. Rigat.  I think we're still with this existential
16 question posed by the first sentence of paragraph two,
17 credibility of witnesses, which in the, I take no part of
18 authorship of this.  It comes straight out of a form book.
19 But I heard what you're saying.  So instead of, how do you
20 determine where the truth lies, that kind of deep question,
21 how do we make it more specific.  How do you determine the
22 credibility of the witnesses.
23         MR. MELLEY:  To me that seems to be where we want
24 to go.
25         MR. RIGAT:  That's fine.

                    THE COURT:  That's fine?  Okay.  You got it.
That's a good point.
                    MR. MELLEY:  I don't know if I'm esoteric.
                    THE COURT:  Oh, very.  Very.  Yes.
                    MR. RIGAT:  That will be Connecticut's
contribution to Vermont.
                    THE COURT:  Exactly.  Exactly.  All right.
          So I will get that in.  And I'm going to run back
because I've got somebody typing on this thing now.  Get
these changes before I lose them and then we'll bring the
jury in and get going.  Okay.  Back in five.
                    (The Court recessed at 9:12 a.m.)

C E R T I F I C A T E

    I, Anne Marie Henry, Official Court Reporter for the United States District Court, for the District of Vermont, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

*Anne Marie Henry*

Anne Marie Henry, RPR
Official Court Reporter

| | |
|---|---|
| 1 | THE COURT: The final stage of this trial is for |
| 2 | me to read the jury charge to you. I'll also give you |
| 3 | copies. So it's about 20 pages long. And I'll send eight |
| 4 | copies back so you can read it at your leisure. It's |
| 5 | quarter of noon. So it will take me 20, 25 minutes to read. |
| 6 | Everybody okay or do you need a break? You good to go? All |
| 7 | right. |
| 8 | Members of the jury, now that you've heard the |
| 9 | evidence and the arguments it's my duty to instruct you on |
| 10 | the law. It's your duty to accept these instructions of law |
| 11 | and to apply them to the facts as you determine them. |
| 12 | My instructions come in two parts. The first part |
| 13 | consists of general instructions about the task of the jury |
| 14 | and about the rules and principles which should guide you in |
| 15 | your deliberations. The second part consists of |
| 16 | instructions which apply to the specific claims and defenses |
| 17 | in this case. I ask that you pay equal attention to both |
| 18 | pardons. |
| 19 | Role of the Court. My duty at this point is to |
| 20 | instruct you as to the law. It is your duty to accept these |
| 21 | instructions of law and to apply them to the facts as you |
| 22 | determine them, just as it has been my duty to preside over |
| 23 | the trial and to decide what testimony, the relevance -- |
| 24 | what testimony and evidence is relevant under the law for |
| 25 | your consideration. |

1    On these legal matters, you must take the law as I
2    give it to.  If any attorney has stated a legal principle
3    different from any that I state to you in my instructions
4    you must follow my instructions.
5    You should not single out any instruction as alone
6    stating the law, but you should consider my instructions as
7    a whole when you retire to deliberate in the jury room.
8    You should not be concerned about the wisdom of
9    any rule that I state.  Regardless of any opinion that you
10   may have as to what the law should be, it would violate your
11   sworn duty to base a verdict upon any other view of the law
12   than that which I give to you.
13   Role of the jury.  As members of the jury, you are
14   the sole and exclusive judges of the facts.  You make
15   decisions based upon the evidence.  You determine the
16   credibility of the witnesses.  You resolve such conflicts as
17   there may be in the testimony.  You draw whatever reasonable
18   inferences you decide to draw from the facts as you have
19   determined them, and you determine the weight of the
20   evidence.  You are to perform the duty of finding the facts
21   without bias towards any party.
22   In deciding the facts, no one may invade your
23   function as jurors.  In order for you to determine the facts
24   you must rely upon your own recollection of the evidence.
25   What the lawyers have said in their opening statements and

there closing arguments, in the objections or in their questions is not evidence. Nor should you consider as evidence anything I may have said or what I may say in these instructions about a fact in issue.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I've made during the trial are not any indication of my views of what your decision should be as to whether or not the plaintiff has proven his case.

You should reach your judgment impartially and fairly, without prejudice or sympathy, solely upon the evidence in the case and without regard to the consequences of your decision. If you let sympathy or prejudice interfere with your clear thinking there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit very entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at a just verdict.

Jurors experience or specialized knowledge. Anything you have seen or heard outside the courtroom is not evidence and must be disregarded entirely. It would be a violation of your oath as jurors to consider anything outside the courtroom in your deliberations. But in your consideration of the evidence, you do not believe behind

 1   your common sense and life experiences.  In other words, you
 2   are not limited solely to what you see and hear as the
 3   witnesses testify.  You are permitted to draw, from facts
 4   which you find have been proved, such reasonable inferences
 5   as you feel are justified in light of the evidence.
 6           However, if any juror has specialized knowledge
 7   expertise, or information with regard to the facts and
 8   circumstances of this case, he or she may not rely upon it
 9   in deliberations or communicate it to other jurors.
10           All persons equal before the law.  Your verdict
11   must be based solely upon the evidence developed at this
12   trial or lack of evidence.  The fact that the plaintiff is
13   an individual and that the defendants are police officers
14   must not enter into or affect your verdict.  This case
15   should be considered in and decided by you as a dispute
16   between persons of equal standing in the community, of equal
17   worth, and holding the same or similar stations in life.
18   All persons stand equal before the law and are to be treated
19   as equals in a court of justice.
20           Evidence.  The evidence in this case consists of
21   the sworn testimony of witnesses, the exhibits admitted into
22   evidence, any stipulations submitted by the parties, and
23   judicially noted facts.  Testimony that has been stricken or
24   excluded is not evidence and you may not consider it in
25   rendering your verdict.  Also, if certain testimony was

received for a limited purpose, such as for the purpose of assessing a witness's the credibility, you must follow the limiting instructions I've given.

There are two types of evidence that you may properly use in reaching your verdict. One type of evidence is direct evidence. Direct evidence is when a witness testifies about something she or he knows by virtue of her or his own senses, something he or she has seen, felt, touched or heard. Direct evidence may also be in the form of an exhibit such as a document or a photograph.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. You may infer on the basis of reason, experience and common sense from one established fact, the existence or non-existence of some other fact. For example, if you were to see cow tracks in a pasture that would be circumstantial evidence that there are or were cows in the pasture.

Circumstantial evidence is of no less value than direct evidence. Generally the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict be based on a preponderance of all the evidence presented.

Objections. From time to time the Court has been called upon to determine the admissibility of certain evidence following objections from the attorneys. It's part

8

1      of the attorney's duty to make objections and you should not
2      draw any conclusions or make any judgment from the fact that
3      an attorney has objected to evidence.  In the same fashion,
4      you should not concern yourself with the reason for any
5      rulings on objections by the Court.
6               Whether offered evidence is admissible is purely a
7      question of law for the Court and outside the province or
8      concerns of the jury.  In admitting evidence to which
9      objections have been made the Court does not determine what
10     weight should be given to such evidence, nor does it
11     assessed the credibility of the evidence.  Of course, you
12     will dismiss from your mind completely and entirely any
13     offered evidence which has been ruled out of the case by the
14     Court and you will refrain from speculation about the nature
15     of any exchange between the Court and counsel held out of
16     your hearing.
17              Expert witnesses.  In this case, I've permitted
18     witnesses to express opinions about matters that are at
19     issue.  These witnesses were the two physicians, Dr. Lena
20     and Dr. Spinella.  A witness may be permitted to testify to
21     an opinion on those matters about which he or she has
22     special knowledge, skill, experience and training.  Such
23     testimony is presented to you on the theory that someone who
24     is experienced and knowledgeable in the field can assist you
25     in understanding the evidence or in reaching an independent

1  decision on the facts.
2       In weighing this opinion testimony, you may
3  consider the witness's qualifications, his or her opinions,
4  the reasons for testifying, as well as all of the other
5  considerations that ordinarily apply when you are deciding
6  whether or not to believe a witness's testimony.
7       You may give the opinion testimony whatever
8  weight, if any you find it deserves, in light of all the
9  evidence in this case.  You should not, however, accept
10 opinion testimony merely because I allowed the witness to
11 testify concerning his or her opinion.  Nor should you
12 substitute it for your own reason, judgment and common
13 sense.  The determination of the facts in this case rests
14 solely with you.
15      Credibility of witnesses.  You have had the
16 opportunity to observe all the witnesses.  It is now your
17 job to decide how believable each witness was in his or her
18 testimony.  You are the sole judges of the credibility of
19 each witness and of the importance of his or her testimony.
20      You are being called upon to resolve various
21 factual issues raised by the parties in the face of very
22 different pictures painted by both sides.  In making these
23 judgments you should carefully scrutinize all of the
24 testimony of each witness, the circumstances under which
25 each witness testified, and any other matter in evidence

1    which may help you to decide the truth and importance of
                2    each witness's testimony.
                3              How do you determine the credibility of the
                4    witnesses?  You watched each witness testify.  Everything
                5    each witness said or did on the witness stand counts in your
                6    determination.  How did the witness impress you?  Did he or
                7    she appear to be frank, forthright and candid or evasive and
                8    edgy as if hiding something?  How did the witness appear,
                9    what was his or her demeanor, that is, his or her carriage,
               10    behavior, bearing, manner and appearance while testifying?
               11    Often it is not what a person says but how I says it that
               12    moves us.
               13              You should use all the tests for truthfulness that
               14    you would use in determining matters of importance to you in
               15    your every day life.  You should consider any bias or
               16    hostility the witness may have shown for or against any
               17    party as well as any interest the witness has in the outcome
               18    of the case.
               19              You should consider the opportunity the witness
               20    has to see, hear and know the things about which he or she
               21    testified, the accuracy of his or her memory, his or her
               22    candor or lack of candor, his or her intelligence, the
               23    reasonableness and probability of his or her testimony, and
               24    its consistency or lack of consistency, and its
               25    corroboration or lack of corroboration with other credible

```
 1   testimony.
 2          In other words, what you you must try to do in
 3   deciding credibility is to size a witness up in light of his
 4   or her demeanor, the explanations given, and all of the
 5   other evidence in the case.  Always remember that you should
 6   use your common sense, your good judgment and your own life
 7   experience.
 8          Impeachment of a witness.  A witness may be
 9   discredited or impeached by contradictory evidence, by a
10   showing that the witness testified falsely concerning a
11   matter or by evidence that at sometime, at some other time
12   the witness said or did something inconsistent with the
13   witness's present testimony.  It's your exclusive province
14   to give the testimony of each witness such credibility or
15   weight That you think it deserves.
16          If you find that a witness testified untruthfully
17   in some respect, you may consider that fact in deciding what
18   credence you will attach to that witness's testimony.
19   Considering that fact and all other relevant evidence, you
20   may accept or reject the testimony of such a witness in
21   whole or in part.
22          In making this determination, you may consider
23   whether the witness purposely made a false statement or
24   whether it was an innocent mistakes, whether the
25   inconsistency concerns an important fact or whether it had
```